501 So.2d 980 (1987)
William Kenneth DOOLEY and Priscilla Krahl Dooley, Plaintiffs-Appellees,
v.
William C. WRIGHT and XYZ Insurance Company, Defendant-Appellant.
No. 18313-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
Rehearing Denied February 19, 1987.
*981 Skeels, Baker & Coleman by Donald L. Baker, Shreveport, for defendant-appellant, William C. Wright.
Rellis P. Godfrey, Shreveport, for plaintiffs-appellees.
Mayer, Smith & Roberts by Kim Purdy, Shreveport, for third party defendants-appellees, D.F. Tucker and Tucker, Hudson, Pierce, Inc.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
MARVIN, Judge.
Defendant, the individual successor in interest of his corporation which built plaintiffs' home, appeals a judgment that *982 awarded damages arising out of the fall of a kitchen wall cabinet and that dismissed defendant's third party demand against his insurance agent.
Defendant contends he is entitled to judgment on the third party demand and that the allocation of five percent comparative negligence to plaintiffs should be increased. Plaintiffs argue in brief that they should not have been found negligent in any respect. Plaintiffs did not appeal or answer defendant's appeal and we do not consider their argument in this respect. CCP Art. 2133; Jones v. Winston, 437 So.2d 889 (La.App.2d Cir.1983).
We also consider on our own motion whether the law allows one who is negligently injured by corporate conduct to recover damages from a shareholder who received the corporate assets when the corporation was dissolved. CCP Art. 927.

FACTS
In 1977 plaintiffs purchased their residence in Shreveport from the builder of the home, William C. Wright Co., Inc. Custom-made cabinets were installed by the builder on the north and south walls of the kitchen, flush with the ceiling. In early 1981 plaintiffs became aware of gaps between the ceiling and the top of the cabinets. The gap was ¾" on the north wall and ¼ to ½ on the south wall. After repeated attempts, plaintiffs succeeded in their efforts to contact defendant Wright by telephone. Plaintiffs were assured by him that the cabinets were properly installed and that there was no need to fear they would fall. Wright did not then inspect the cabinets.
More than a year later in 1982, plaintiff Mr. Dooley reinforced the cabinet on the north wall because of the larger and more unsightly gap, but not the cabinet on the south wall.
On May 1, 1983, as Mrs. Dooley stooped to put away cooking utensils, the south wall cabinet and its load of dishes fell on her, causing a fracture of the right hemi-pelvis and cuts and bruises over her lower body. She was hospitalized for several days. When she returned home she slept in a lounge chair for about six weeks because she could not rest comfortably in bed. She initially used a walker or a cane and could not walk normally without assistance. She still experienced occasional dizziness at the time of trial 19 months after the accident.
Several months before the cabinet fell, the corporation, William C. Wright Co., Inc., was dissolved in voluntary liquidation proceedings with Mr. Wright as its liquidator. On March 28, 1983, all corporate assets were formally conveyed to Wright, who was identified as the sole shareholder, in exchange for his shares of stock.
Over the years Wright had purchased his personal and corporate insurance almost exclusively from Donald F. Tucker of the Tucker-Hudson-Pierce, Inc. agency. At Wright's request, Tucker caused the corporation's liability policy to be cancelled as of January 31, 1983, the effective date of the corporate dissolution. Property insurance in Wright's name was then procured to cover the corporate assets he received in the liquidation, but there was no discussion between Wright and Tucker about coverage for Wright's exposure to personal liability for negligence of the corporation during its existence.
Suit was brought against Wright individually and as successor in interest of the dissolved corporation. Wright brought third party demands against several insurers that were dismissed on motions for summary judgment that decreed no coverage for the Dooley accident. In his third party demand against Tucker and the corporate insurance agency, Wright alleged Tucker's failure to procure coverage to fully protect the corporation and Wright individually from all liability claims arising out of the corporation's business as a homebuilder.
The trial court found that the cabinets were negligently installed but assessed plaintiffs with five percent negligence because they had observed the sagging for many months and should have suspected that the south wall cabinet was unsafe.
*983 The court awarded $4,150 in special damages, $20,000 for Mrs. Dooley's general damages, and $3,000 for Mr. Dooley's loss of consortium, but reduced each amount by five percent.
The trial court rejected Wright's claim against Tucker and the agency corporation, finding Wright failed to carry his burden of proving that Tucker's actions warranted any reasonable assumption by Wright that he was covered by liability insurance for this risk.
We address the issue of individual liability for negligent acts of a corporation which was only implicitly touched on below.

STOCKHOLDER'S LIABILITY FOR NEGLIGENT CONDUCT OF CORPORATION LATER DISSOLVED
A party injured by negligent conduct of a corporation may recover from its stockholder who succeeds to the dissolved corporation's assets, but recovery cannot exceed the value of the corporate assets the stockholder receives upon dissolution. Ortego v. Nehi Bottling Works, 182 So. 365 (La.App.2d Cir.1938).[1] See casenote at 13 Tul.L.R. 308. Compare Collins v. Richland Aviation Service, Inc., 225 So.2d 241 (La.App.2d Cir.1969); McGregor v. United Film Corporation, 351 So.2d 1224 (La. App.1st Cir.1977), writ denied; and Roddy v. Norco Local 4-750, 359 So.2d 957 (La. 1978).
Here, the injury that was caused by the negligent installation of the cabinet during the existence of the corporation did not occur until the corporation had been dissolved.
Following Ortego and Collins, supra, we adopt the rationale of Fudickar v. Inabnet, 176 La. 777, 146 So. 745 (1933):
The case is one in which the debtor corporation has been liquidated, the liquidator discharged, and the corporate assets distributed among the former directors and stockholders. If in these circumstances no liability for the corporate debts attaches to the distributees, the plaintiff occupies the anomalous position of the possessor of a right without a remedy to enforce it.
The act of conveyance of all corporate assets to Wright individually recites that it is made "subject to all the obligations of William C. Wright Co., Inc."
Ordinarily, a conveyance of property made "subject to" an obligation, but without the express assumption of personal liability, would preserve only whatever security interest the creditor had in the property but would not give the creditor recourse personally against the transferee. See Massey v. Finch, 24 La.Ann. 28 (1872). In ordinary circumstances, the creditor continues to have recourse personally against the original debtor and transferor. When the transferor is a dissolved corporation, however, its creditors no longer have the corporate entity against which to seek recourse. In these circumstances, the conveyance of property "subject to" corporate obligations should not and does not shield the stockholder-transferee from personal liability, but his liability is limited by Ortego, supra, to the value of the assets received.
According to the record, the assets conveyed to Wright included seven lots in Caddo Parish subdivisions, two promissory notes totaling $187,000 in principal secured by vendor's liens and mortgages on real estate, three automobiles, and refunds which may have been due the corporation by the City of Shreveport.
Wright did not seek to invoke the Ortego principle. It is obvious that the reasonable value of the assets received by Wright in 1983 exceeds the judgment or "value" at issue in this lawsuit.

COMPARATIVE NEGLIGENCE
The kitchen cabinet that fell was about six feet wide and four feet high, with four shelves being used for the intended purpose of storing dishes. The cabinet extended to the ceiling.
*984 Wright does not contest, and we agree with, the trial court's conclusions that the cabinet was negligently installed with five nails and only one screw and that if the cabinet had been installed with six or more screws into horizontal and vertical structural framing it would have remained affixed to the wall, even when loaded with dishes.
Wright seeks to increase the percentage of negligence allocated to plaintiffs. We consider Wright's argument, but not the plaintiffs' argument that they were not negligent. The trial court found that plaintiffs should have suspected that the south wall cabinet was unsafely installed once they noticed the sagging of the north wall cabinet. Plaintiffs' percentage of negligence was minimized by the trial court "because of Mr. Wright's reassurances as to [the cabinets'] safety, his knowledge of complaints about the condition of cabinets in other houses he had built, and [their awareness of] his expertise in his field."
Wright contends that it was unreasonable for plaintiffs to rely on his assurances of safety since they had seen the condition of the cabinets and knew he had not. We must disagree.
In assessing comparative fault, the trier of fact must consider the nature of each party's conduct and the extent of the causal relationship between the conduct and the damages claimed. Relevant factors concerning the nature of each party's conduct include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985).
Not disputing that the cabinets were negligently installed, Wright contends the installation was done without his conscious awareness of danger because the method of installation he used was the most prevalent method in the homebuilding industry.
Mr. Dooley testified that he found only two nails in the cabinet he reinforced, as compared with five nails and one screw in the south cabinet which did not sag as much as the north cabinet.
Before the Dooley accident, two of plaintiffs' neighbors had similar experiences with kitchen cabinets that sagged in their homes which were built by Wright's corporation. One neighbor told Wright about the sagging cabinets.
During his 20 years in business, Wright built at least 250 homes. He said he had never heard of a cabinet falling off the wall before the Dooley accident. When another builder who happened to be in their home commented to them about the sagging cabinets, plaintiffs contacted Wright and expressed their concern that the cabinets might fall. Plaintiffs relied on Wright's expertise as a home builder and his assurances to them even though they knew he had not inspected the cabinets. These facts do not render plaintiffs' reliance unreasonable or serve to increase their five percent negligence found by the trial court, the propriety of which finding we do not here otherwise consider.
We find no clear error in the trial court's conclusion that Wright's corporation was [at least] 95 percent negligent, considering the causal relationship between the negligent installation and the cabinet's fall as well as the homeowners' reasonable reliance on the builder's assurance that there was no danger of the cabinets falling. As we have stated, we cannot reduce the allocation of fault to plaintiffs. CCP Art. 2133; Jones, supra. See Watson, supra; Finley v. North Assurance Company of America, 476 So.2d 837 (La.App.2d Cir. 1985), citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

THIRD PARTY DEMAND
Wright's third party demand seeking indemnity for any judgment against him was dismissed by the trial court because Wright *985 failed to prove that Tucker's actions warranted any reasonable assumption by Wright that he was properly insured. We agree with the trial court.
The elements of proof required to prove a claim alleging an insurance agent's failure to obtain coverage are: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain it; and (3) that the actions of the agent warranted an assumption by the client that he was properly insured. Porter v. Utica Mutual Insurance Company, 357 So.2d 1234 (La.App.2d Cir.1978).
The trial court made findings of fact, which we find to be supported by the evidence, that Wright informed Tucker he was dissolving his corporation and desired that his business policies be cancelled and the returned premiums applied to his personal policies. When the business policy was cancelled on January 31, 1983, Wright signed a release acknowledging that no claims could be made under that policy for losses occurring after the date of cancellation. Wright and Tucker had no conversations about continuing insurance coverage for business liability after the dissolution of the corporation. While Tucker erroneously believed that Wright would not incur any post-dissolution personal liability for negligent construction performed during the corporation's existence, Tucker did not communicate his belief to Wright.
The evidence further shows that although Wright had often relied on Tucker's advice or recommendations about insurance coverage in the past, he knew that Tucker was not a lawyer, competent to give legal advice. Wright and Tucker assumed that liability insurance covering the corporation was no longer needed after the dissolution. Neither contemplated the possibility that claims based on negligent corporate conduct could be brought against Wright personally, as successor in interest of the corporation who received the corporate assets upon dissolution. Wright did not ask the attorney who dissolved the corporation about his personal exposure for negligent corporate conduct until after this action was filed. Even after learning of his exposure, Wright did not seek or obtain coverage for his personal liability arising from other derivative possibilities.
The evidence does not support a finding that Tucker undertook or agreed to procure insurance to cover Wright's personal liability for negligence of the corporation. Because Wright made no request for such insurance, his assumption that Tucker was obligated to procure such coverage for him was patently unreasonable. We find no error in the trial court's dismissal of Wright's third party demand against Tucker and the Tucker corporate agency.

DECREE
We affirm the judgment at appellant's cost.
NOTES
[1] After trial on the merits, judgment against the individual stockholders in Ortego was affirmed by the supreme court at 199 La. 599, 6 So.2d 677 (1942).