516 So.2d 1162 (1987)
Nellie SANDERS, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Defendants-Appellees.
No. 19041-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
*1163 William Henry Sanders, Jena, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by: G.M. Bodenheimer, Jr., Nelson & Achee Ltd., by: Roland J. Achee and James S. Denhollem, Shreveport, for defendants-appellees.
Before HALL, C.J., and JASPER E. JONES, FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
HALL, Chief Judge.
This is a personal injury action arising from an automobile accident. The plaintiff is Nellie Sanders. The defendants are Thomas B. Newman, his employer Reliance Electric Company, Northwestern National Insurance Company, National Car Rental, Acadian Car Rental and Guarantee Insurance Company.
Negligence on the part of Newman was stipulated and after a trial on the issue of damages, the district court awarded the plaintiff $55,000.00 in general damages, $5,000.00 for disfigurement and $11,592.30 in medical expenses. It denied plaintiff's claims for future medical expenses, past wage loss for the 1985-86 school year, future wage loss, loss of profession, loss of accumulated sick leave and loss of sabbatical leave. Judgment was rendered against Newman, Reliance and Guarantee Insurance Company for a total amount of $71,592.30. Plaintiff appealed seeking to increase the award. We amend to increase the award, and as amended, affirm.[1]
The Facts
The accident occurred on March 22, 1982. Mrs. Sanders and her husband were traveling south on Highway 1 from Shreveport to their home in Alexandria. They were driving two separate automobiles with Mr. Sanders in the lead. Mr. Newman was traveling north on Highway 1 when the car he was driving crossed over the center line, forcing Mr. Sanders' automobile off the road and then colliding head on with the automobile driven by Mrs. Sanders. Mrs. Sanders was traveling at 50-55 m.p.h. when the collision occurred. Mr. Sanders saw the collision in his rear view mirror. He testified that after the cars collided, they began traveling backwards from the point of impact.
*1164 Mrs. Sanders was disoriented by the accident. Her lip and mouth were lacerated, her partial denture was broken and her nose was bleeding. Additionally, she received bruises on her face, legs, wrist and chest. She was taken to a hospital for emergency treatment. Mrs. Sanders testified that her main concern at this time was her facial injuries. X-rays of the skull, nasal bones and chest were negative. Her lip was stitched, she was given pain medication and released.
Mrs. Sanders stayed in bed at home for several days after the accident and did not return to her job as an elementary school teacher that semester.
One week after the accident Mrs. Sanders went to see Dr. Palmer J. Texada, an Alexandria general surgeon. He removed the stitches in her lip and noted that she had contusions of the chest and abdomen. Mrs. Sanders also complained of some pain at the base of the skull. Dr. Texada examined her neck, noting that her range of motion was good and that she only had slight tenderness. He had no notations regarding complaints of low back pain and did not prescribe any pain medication. Dr. Texada did not take X-rays of plaintiff's neck or back and testified that her condition did not warrant referral to an orthopedic surgeon. Mrs. Sanders saw Dr. Texada two more times, once in April and once in May, 1982, for treatment of her lip and mouth injuries. He testified that he did not feel that Mrs. Sanders had any residual disability and that she did not need hospitalization, physical therapy, traction or a cervical collar.
Nine days after the accident Mrs. Sanders had her first visit with Dr. John J. McCutchen, a Houston neurologist. His initial diagnosis was that Mrs. Sanders had sustained a concussion and a mechanical spine injury involving the neck and low back regions. He also noted muscle spasms in the neck and lower back and a diminution of the ankle reflexes. X-rays of the lumbosacral spine revealed narrowing of the L-5/S-1 disc space and an EMG test showed abnormalities in the low back region at L-4/5 and L-5/S-1. Cervical spine X-rays were normal. He prescribed a cervical collar and pain medication. On Dr. McCutchen's recommendation, Mrs. Sanders began physical therapy at the Rapides General Hospital in Alexandria. Mrs. Sanders next saw Dr. McCutchen in May, 1982. He noted that while her pain was somewhat less she was still experiencing pain in her neck and lower back from time to time.
In May, 1982 an EMG test done in Houston indicated possible C6-C7 nerve root irritation. In July, 1982, Dr. McCutchen noted that certain reflexes in Mrs. Sanders' arms were absent and that she still had spasm in the neck and low back muscles. This was again noted at Mrs. Sanders' last visit to Dr. McCutchen on October 4, 1982. He also found tenderness with fluid in the right knee joint. She continued to complain of neck and low back pain. X-rays showed some narrowing of the L-5/S-1 disc space and to a lesser extent, at L-4/5 in the neck region. Muscle spasm was noted in the neck and low back.
Mrs. Sanders did not see Dr. McCutchen after October, 1983. He gave a deposition in May 1983, and died sometime thereafter. In his deposition, Dr. McCutchen stated his belief that the automobile accident caused Mrs. Sanders' medical problems. He further opined that she would need continued medical supervision and, if her problems continued, surgery.
Mrs. Sanders resumed her teaching position in the fall of 1982 and only missed two and one-half days for personal illness during the 1982/1983 school year.
In June 1983 at the request of the defendants, Mrs. Sanders was examined by Dr. Warren D. Long, Jr., a Shreveport neurosurgeon. He found no evidence of any cervical or lumbar disc disease or nerve root irritation and diagnosed her as having a mild ligamentous problem of a chronic nature in her neck and to a lesser extent in the lumbar area. He did not anticipate that she would need surgery and saw no need for any further tests.
In October 1983, Mrs. Sanders consulted Dr. Bruce Craig primarily for weight loss purposes. Additionally, he gave her a shot *1165 of cortisone in her left shoulder at that time.
During the 1983/1984 school year Mrs. Sanders only missed five days for personal illness. In 1984, Mrs. Sanders did not see any physicians regarding the injuries she sustained in the automobile accident. Mrs. Sanders was granted a sabbatical leave for the 1984/1985 school year to pursue her master's degree.
In May 1985, Mrs. Sanders was seen by Dr. R.C. Llewellyn, a New Orleans neurosurgeon. His initial diagnosis was a muscle ligament sprain in the neck and low back; however, he was concerned that there might be associated disc problems. She complained of neck pain radiating into both shoulders and arms, numbness in the fingers and low back pain radiating into both legs. Dr. Llewellyn's exam revealed muscle spasm in the low back and restriction of neck and waist bending movements.
In June 1985, a CAT scan ordered by Dr. Llewellyn revealed no abnormalities of the cervical or lumbar spine. An EMG test was abnormal in the neck area but normal in the lumbar area.
Mrs. Sanders resumed her teaching position in the fall of 1985. On September 18th of that year she was standing on a chair at school when it broke. She fell to the floor, sustaining bruises to her buttocks, right leg and right arm.
From September 29 until October 2, 1985, Mrs. Sanders was hospitalized in New Orleans by Dr. Llewellyn for tests. She had made the appointment for these tests prior to her fall at school. At that time she had muscle spasms in the neck and complained of pain in her head, neck, shoulders and arms. Dr. Llewellyn testified that while it was possible that the falling accident at school could have accentuated Mrs. Sanders neck and back problems, he was convinced that she had not sustained any significant new problems. A lumbar and cervical myelogram showed a disc injury in the L4-L5 segment, and a disc herniation at C6-7. Dr. Llewellyn advised Mrs. Sanders that she should have surgery for the disc problem in her neck. He felt that she should be able to rehabilitate her low back without surgery.
By deposition, Dr. Llewellyn testified that these complaints remained essentially unchanged when he last examined her in December, 1985. He also testified that her problems were related to the injuries she sustained in the auto accident.
On October 14, 1985, approximately two weeks after falling from the chair at school, Mrs. Sanders took a leave of absence without pay from her teaching position. She has not worked since that time.
On February 14, 1986, at the request of some of the defendants, Mrs. Sanders was examined by Dr. Don K. Joffrion, an orthopedic surgeon. He found no neurological deficits and no objective signs of physical injury. He did note as a likely cause of her chronic pain that she was suffering from tension, anxiety and depression. He further noted that the automobile accident probably aggravated a preexisting psychological condition.
Mrs. Sanders was also examined by Dr. Ronald S. Pryer, a clinical psychologist, who found that she had a very serious mental impairment characterized by depression, anxiety, tension, lack of self confidence and social withdrawal. He opined that these symptoms would make it impossible for Mrs. Sanders to function as a school teacher. He concluded that there was a causal relationship between the accident and her deterioration of functioning over the years and that the accident had played a significant role in this deterioration.
Dr. John Cobb, an orthopedic surgeon from Lafayette, saw Mrs. Sanders one time on March 19, 1986. Her chief complaint was of neck and low back pain, she also had arm pain, pain extending from her neck down to her shoulders and low back pain, predominately on the left side with pain extending to the leg. Dr. Cobb did not find that Mrs. Sanders had any ligamentous problems but did find that she had some degree of either referred neurological pain or some direct compression of the nerve. He testified however that she did not have a significant neurological deficit. His findings were based on Mrs. Sanders' *1166 complaints of pain. He did not find any objective signs of injury and had no way of knowing whether her subjective signs were caused by the first or the second accident. He noted that her complaints and her physical findings would be consistent with an injury to a cervical disc.
Dr. Richard Galloway, an expert in vocational rehabilitation, examined Mrs. Sanders in November 1985. He found that she was emotionally distraught, unable to concentrate and very concerned about her physical health. He felt that she needed psychotherapy and medication. He concluded that she was not employable as a school teacher at that time.
Mrs. Sanders testified that at the time of the trial she continued to experience pain in her neck, shoulders, arms, hips and legs, which she had experienced, at least intermittently, since the 1982 automobile accident. She also experienced headaches and numbness in her hands and fingers. She stated that sitting or standing too long and bending caused her discomfort, especially in her left hip. She stated that these symptoms interferred with her ability to do her housework and to perform her duties as a school teacher.
Mr. Sanders testified that since the accident Mrs. Sanders has been very irritable and crys a lot, stating "her nerves are just shot". He also testified that the frequency of their sexual relations decreased due to Mrs. Sanders' back and hip pain.
Trial Court Findings
In denying Mrs. Sander's claim for future medical expenses, future wage loss and loss of profession, the trial judge found that there was inadequate support for such awards especially in view of the extended period of time subsequent to the accident that no medical treatment was sought and no medical expenses incurred. He reasoned that while Mrs. Sanders might have been disabled at the time of the trial, the evidence did not establish that the automobile accident caused such disability. He noted that for two years subsequent to the accident, Mrs. Sanders missed very few working days. This factor also contributed to his denial of the past wage loss claim for the 1985-1986 school year which he found was not attributable to the automobile accident. In awarding the plaintiff's claim for medical expenses, the trial judge found that it was more probable than not that the expenses related to the accident. The trial judge denied plaintiff's claims for loss of accumulated sick leave and loss of sabbatical leave finding that they were too speculative to justify an award.
The Amount of the AwardDisability and Causal Relationship
Plaintiff contends the trial court erred in awarding inadequate general damages, and in failing to award past and future loss of wages and future medical expenses. The thrust of plaintiff's argument is that Mrs. Sanders has experienced pain since the accident in March 1982, became disabled in the fall of 1985, and continues to be disabled because of her cervical and lumbar disc problems which require surgery, and because of her mental and emotional problems which prevent her from teaching, all of which were caused by the March, 1982 accident.
Defendants, on the other hand, contend that Mrs. Sanders recovered from the 1982 accident, worked steadily and without medical treatment for over two years, that she is not presently physically disabled, and that the evidence does not establish a causal connection between any physical or mental disability she presently has and the March, 1982 accident. Defendants emphasize the September, 1985 fall from a chair and other factors which likely have contributed to her present condition.
An appellate court should not disturb a finding of fact unless it finds it to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). It is well settled that plaintiff has the burden of proving by a preponderance of the evidence damages caused by defendant's fault. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Coleman v. Victor, 326 So.2d 344 (La.1976). The law recognizes that a medical condition producing disability is presumed to have resulted from an accident if before the accident the injured person was in good health but shortly after the accident the disability-causing condition manifested itself, provided *1167 there is a reasonable possibility of a causal connection between the accident and the condition. In order for such a legal presumption to apply, the plaintiff must prove, inter alia, that there is a reasonable possibility of a causal nexus. Heath v. Northgate Mall, Inc., 398 So.2d 132 (La. App. 3d Cir.1981); Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981). The plaintiff must show proof by a reasonable preponderance of the evidence of such a causal nexus. Taylor v. Mitcham, 499 So. 2d 173 (La.App. 2d Cir.1986).
Mrs. Sanders was involved in a high speed head-on collision which undoubtedly resulted in severe trauma to her body. Within a few days after the accident she was complaining of pain in her neck and shoulders and low back area. She was treated for these symptoms by Dr. McCutchen from March until October, 1982 with medication, physical therapy and traction. There was indication of mechanical injury to her spine in the cervical area. Dr. McCutchen predicted that her problem could worsen over the next two or three years.
Although Mrs. Sanders went back to teaching and did not seek further medical treatment for a substantial period of time, her testimony, supported by that of her husband and neighbors, was that she continued to have pain in these and other areas, at least intermittently. Examination by the defendants' doctor in June 1983, revealed that pain in the cervical and lumbar area persisted, and although Dr. Long found no evidence of cervical or lumbar disc disease, he opined that she had mild ligamentous strains of a chronic nature in those areas. Two years later, in June, 1985, plaintiff sought examination and treatment by Dr. Llewellyn, with the same complaints. A CAT scan indicated no abnormalities in the cervical or lumbar spine, but an EMG indicated pathology involving cervical nerve roots. Further testing in October, 1985 disclosed bulging discs in the cervical and lumbar areas. Dr. Llewellyn, whose credentials are good, believed surgery was indicated on the cervical disc but that the lumbar disc could be treated conservatively. He was of the firm opinion, based on Mrs. Sanders' history, that the disc problems were caused by the March, 1982 automobile accident. The disc findings were consistent with her complaints of pain in the cervical and lumbar areas which had persisted from the time of the accident. He was also of the opinion that the fall may have aggravated and accelerated the original injuries, but that the fall did not cause any new injuries since Mrs. Sanders' complaints were essentially the same before and after the fall. He noted that disc injuries often get progressively worse over a period of time.
Dr. Joffrion found no objective signs of physical injury in his one examination, but in reviewing the test results from New Orleans when his deposition was taken, verified the bulging discs but saw no nerve involvement. He believed Mrs. Sanders had serious emotional problems. Dr. Cobb believed there were indications of a cervical disc problem, but wanted further testing.
The more extensive examination and testing done by Dr. Llewellyn gives greater weight to his conclusions than the one-time examinations without x-rays or other procedures done by Dr. Joffrion, who we need to add, also has good credentials. We are persuaded that surgery is needed.
Dr. Pryer and Dr. Galloway, both with good credentials, believe Mrs. Sanders is totally disabled from teaching due to her medical and emotional problems, and Dr. Pryer was of the opinion the problems were caused by the automobile accident.
Although the medical witnesses disagreed as to the extent of Mrs. Sanders' physical problems, none questioned that she is sincere or that she is experiencing involuntary pain, whether due to her physical or emotional injuries.
It is, perhaps, unusual that Mrs. Sanders did not seek medical treatment for the period from October 1982 to May 1985, about two and a half years, if she was continuing to have physical problems of the nature she described. However, she had a fear of surgery, wanted to teach and pursue her master's degree, and, as she stated, was not a quitter. Obviously, her pain and symptoms during that time must not have been disabling or constant, but there is no reason to doubt that she continued to experience *1168 intermittent problems which she handled by reducing her activities and taking medication such as aspirin. The extended gap in medical treatment does not necessarily mean a gap in symptoms flowing from the injuries she received in the accident.
The evidence does not support a finding that the fall from the chair in September, 1985 caused her present cervical and lumbar disc conditions. Her symptoms were present when Dr. Llewellyn examined her in June prior to that accident. She had scheduled the later examination by Dr. Llewellyn prior to the fall. The fall almost certainly aggravated her pre-existing condition, but was not the sole or originating cause of her present condition.
Thus, the preponderance of the evidence establishes that Mrs. Sanders is presently disabled because of physical and emotional injuries caused in substantial part by the March, 1982 automobile accident. We believe the trial court was clearly wrong in finding otherwise. In this respect we note the inconsistency between the award of all medical expenses incurred up to the time of trial as related to the accident and the finding that Mrs. Sanders' present medical problems are not related to the accident.
The testimony of the doctors is that Mrs. Sanders has a good chance, at least 85%, of recovery after surgery and should be able to return to work within a few months. The psychologist believed her emotional problems would clear up after resolution of her medical problems but that counseling might be needed.
Accordingly, Mrs. Sanders is entitled to future medical expenses which we fix at $13,600 according to the estimates of Dr. Llewellyn and Dr. Pryer. She is entitled to loss of past and future wages she could have earned during the 1985-86, 1986-87 and 1987-88 school years which we fix at $56,510.73 ($14,992.65 for part of 1985-86 + 2 X $20,759.04 for the next two school years). Since her pain and suffering were continuing at time of trial, we increase that award from $55,000 to $75,000.
As to loss of wages during the 1982-83 school year, Mrs. Sanders did not lose any wages. She used some accumulated sick leave days, but the economic value of this loss, if any, was not established by the evidence. The sabbatical leave was not taken because of the accident, but for professional improvement by pursuing a master's degree, and no award is due in that regard.
Decree
For the reasons assigned, the judgment of the district court is amended to increase the total award from $71,592.30 to $161,703.03, and, as amended, is affirmed, at defendants-appellees' costs.
Amended and as amended, affirmed.
SEXTON, J., dissents with written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent, being of the view that the trial judge was not clearly wrong that any disability the plaintiff may currently have is not attributable to the accident in question. Most of the doctors concluded that she had no physical problem at the time of trial. The only doctor that did so based his conclusion on a CAT scan over three years after the accident taken just after she had suffered another significant accidentfalling off of a stool in her classroom.
NOTES
[1] This case was assigned to a five judge panel pursuant to LSA-Const. Art. 5, Section 8(B).