552 So.2d 688 (1989)
Sidney Michael NICHOLS and Minette Cowser Nichols, Plaintiffs-Appellants,
v.
STONE CONTAINER CORPORATION, Defendant-Appellee.
No. 20941-CA.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1989.
Writ Denied January 19, 1990.
*689 Boles, Boles & Ryan by William R. Boles, Jr., Gregory Scott Moore, Monroe, for plaintiffs-appellants.
John C. Blake, Chris L. Bowman, Jonesboro, for defendant-appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
This civil appeal arises out of a personal injury lawsuit. Plaintiff-appellant argues that the district court abused its discretion in several particulars, notably the allocation of fault between plaintiff and defendant and the calculation of damages which plaintiff suffered. For reasons which will be considered more fully below, we affirm in part, amend in part, and affirm as amended.

FACTS
In the late afternoon or early evening of November 25, 1985, plaintiff was on defendant's business premises for the purpose of unloading his 18-wheel tractor-trailer rig of waste paper. Plaintiff entered defendant's facility and backed his truck to the unloading ramp without incident.
Shortly after backing his truck into place, plaintiff fell into a ten-foot hole a short distance from his rig, close to the edge of the ramp.
After falling into the hole, plaintiff summoned assistance by calling out and lighting his cigarette lighter. A forklift operator *690 who was in the process of unloading plaintiff's rig heard plaintiff calling and went to his assistance. After pulling plaintiff out of the hole, the forklift operator noticed that plaintiff was having difficulty walking and appeared to be leaning to one side. He therefore summoned his supervisor to report the accident.
After being taken to Lincoln General Hospital, plaintiff was diagnosed as having a compression fracture of the L-2 vertebra. He was thereafter prescribed medication for pain and rest.
The next day, plaintiff saw Dr. William Bundrick, an orthopedic surgeon in Shreveport, whose diagnosis was in agreement with the one made in the emergency room the evening before. He started plaintiff on a series of office visits and rehabilitation, accompanied by new medication.
After about three months of remaining off work, plaintiff attempted to engage in truck driving once again, but experienced significant pain and discomfort following only one trip and was ordered by Dr. Bundrick to discontinue truck driving.
At that point, his employer, Davison Transport, began to use plaintiff in the capacity of assistant safety director. However, no such position truly existed and, once the need for such could no longer be justified, plaintiff's job duties changed. He was then assigned by Davison as a relief dispatcher but was given a wide variety of duties.
When plaintiff's pain and discomfort continued, he sought a second medical opinion from an orthopedic surgeon in Monroe, Dr. Rifat Nawas. His opinion was in keeping with that of Dr. Bundrick, that plaintiff had suffered a (now healed) compression fracture of the L-2 vertebra. However, Dr. Nawas noted arthritic changes in the area of the now healed vertebra and suspected herniation of the L-4 to L-5 disc.
Plaintiff underwent an MRI, a CAT scan, and a myelogram. The results of all those tests were read by both physicians. In addition to the healed compression fracture, which had been diagnosed shortly after the accident, the tests confirmed a bulging disc at L-4 to L-5, which had only been suspected prior to those tests being conducted.
Since the accident, plaintiff has continued to be employed by Davison Transport, though at a lower salary than he was earning as a truck driver. He also has the benefit of a company car. However, plaintiff strenuously asserts, and testimony by other witnesses tended to corroborate, that the nature of his job was only temporary and that his employment with Davison would terminate as soon as the instant litigation was concluded.
Following trial, after taking the matter under advisement, the district court rendered judgment finding defendant 20 percent liable for the accident and allocating 80 percent of the fault to the plaintiff. The court awarded plaintiff $57,199.97 in lost future income, $6,547.16 in past medical expenses, $16,002.00 in future medical expenses, $20,207.00 in lost past income, and $30,000.00 in general damages, all of which were to be reduced in accordance with plaintiff's percentage of fault. Recovery for loss of services was denied plaintiff and his wife for failure to prove such damages, owing in part to the court's credibility assessment of their testimony. The court also denied plaintiff recovery for loss of fringe benefits based upon the economic expert's conclusion that such loss would be "minimal" if plaintiff remained employed with Davison.

AFFIRMATIVE DEFENSE
Plaintiff initially argues that the district court erred in admitting, despite his timely objection, evidence which tended to establish that the accident resulted in whole or in part from his own negligence. Plaintiff points out, and defendant admits, that no affirmative defenses were ever pled by the defendant in its answer. However, defendant argues that the plaintiff's negligence was the subject of discussion during a pretrial conference with the trial judge and was expressly included in a pretrial statement which was prepared by the parties several months prior to trial and which *691 was jointly introduced into evidence on the first day of trial.
The district court heard the evidence, subject to the objection. However, the trial court ordered briefs on the issue and subsequently issued a ruling accepting the evidence. The decision was based upon the conclusion that the issue had been contemplated by the parties and had been made a part of the pretrial statement filed into the record by the parties, and that the plaintiff was neither surprised nor prejudiced under the circumstances.
The answer shall set forth affirmatively assumption of risk, contributory negligence, and any other matter constituting an affirmative defense. LSA-C.C.P. Art. 1005. The purpose of this requirement is to give fair notice of the nature of the defense and prevent surprise. Webster v. Rushing, 316 So.2d 111 (La.1975); Bank of Coushatta v. Evans, 313 So.2d 644 (La. App.2d Cir.1975).
In Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973), in consolidated trials involving an intersectional collision of two vehicles, the supreme court held that reference to the contributory negligence of one of the parties in the pretrial order to which the parties agreed constituted an implied and/or express consent of the parties that it was one of the issues for determination by the court.
Just as in Austrum, it is clear that the negligence of the plaintiff was at issue in the instant case by agreement of the parties' pretrial statement. Moreover, the plaintiff was aware, or should have been aware several months before trial, that the defendant would defend the case on the basis of plaintiff's negligence. Additionally, defendant listed several witnesses whose testimony concerned the visibility of the hole and the safety precautions taken with regard to the hole. The competent interrogation of witnesses by plaintiff's counsel undermines plaintiff's argument that he was surprised by allegations of his negligence and was not prepared to meet those allegations.
We have no difficulty concluding that the plaintiff was not surprised by the issue and that the inclusion of the issue in the pretrial statement entered into evidence by stipulation controls the subsequent course of action of the case authorizing evidence on the issue of the plaintiff's negligence. Similarly, the plaintiff's corollary argument that the trial court abused its discretion by ordering the defendant to amend its pleadings to conform to the evidence is to no avail, as the pretrial order entered into the record by stipulation is controlling. See Austrum v. City of Baton Rouge, supra.

ALLOCATION OF FAULT
Following trial the district court allocated twenty percent (20%) of the fault for the accident to the defendant, while finding that plaintiff was eighty percent (80%) at fault. In a written opinion, the district court noted that there was adequate lighting nearby to illuminate the hole and that there was bright yellow flagging lying on the ground near the hole. Additionally, the district court concluded that plaintiff had been in the same area before, the last time only days before the accident, and should have been more alert to the presence of the hole.
The court also concluded, with regard to plaintiff's duty of care, that he could have, and should have, seen the excavation because there was dirt piled around the hole and the warning flagging lying on the ground about two feet from the edge of the hole. Finally, the district court noted that there was no reason for the plaintiff to be wandering around, contrary to plaintiff's assertion that he was looking for someone to unload his truck, because one of defendant's employees was already in the process of unloading the truck with a forklift.
Plaintiff argues that the district court abused its discretion in arriving at these conclusions. He asserts that due to inadequate lighting, warnings, and covering for the hole defendant permitted an unreasonably dangerous situation to exist on its premises for too long without taking reasonable steps to avoid an accident. He argues that the low cost of avoidance, *692 when viewed in light of the great risks of harm presented by an uncovered hole, renders defendant's failure to protect others from these risks unreasonable.
With regard to plaintiff's own actions, he asserts that the district court misinterpreted or wrongly characterized the evidence. Plaintiff conceded that he saw general signs of construction on his previous visits to defendant's premises, but he denied ever having seen the hole. He also claims not to have seen construction activities or flags when he was there six days before the accident. Finally, plaintiff argues that he did not see that his truck was being unloaded, so his attempts to find someone to unload his truck were not unreasonable.
Defendant argues that the district court's detailed analysis of the facts supports the allocation of fault between the parties and is entitled to much discretion.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned including:
1. Whether the conduct resulted from inadvertence or involved an awareness of danger;
2. How great a risk was created by the conduct;
3. Significance of what was sought by the conduct;
4. The capacities of the actor, whether superior or inferior; and
5. Any extenuating circumstances which might require the actor to proceed in haste without proper thought.
Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La. 1985); Dooley v. Wright, 501 So.2d 980 (La.App. 2d Cir.1987), writ denied, 512 So.2d 442 (La.1987). In determining comparative fault, the greater the risk of harm to others, the greater is the fault. Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985).
Allocation of fault is a factual finding which an appellate court does not disturb unless, upon articulated and detailed analysis and reasons, that finding is demonstrated to be clearly wrong. Rodgers v. National Dealer Services, Inc., 508 So.2d 1007 (La.App. 2d Cir.1987), writ denied, 512 So.2d 1183 and 513 So.2d 1211 (La.1987); Abraham v. Hanover Insurance Co., 420 So.2d 526 (La.App. 2d Cir.1982).
In Landry v. State, 495 So.2d 1284 (La. 1986), plaintiff went to a sea wall owned, operated, and maintained by the Orleans Levee Board to fish for crabs. After he had finished crabbing, he was ascending the sea wall's concrete steps while carrying his crab nets on top of a hamper containing his catch. As he reached the sea wall's top step, he saw out of his lateral vision the edge of a large hole adjacent to the sea wall and immediately in his path. He attempted to step back from the hole and, in doing so, lost his balance and fell down the sea wall, injuring his knee.
The Louisiana Supreme Court found that the hole presented an unreasonable risk of harm and held the levee board liable for the defect which caused plaintiff's injury. However, the court also applied comparative fault to this strict liability situation to give similarly situated plaintiffs a motivation for exercising reasonable care while not diminishing a property owner's incentive to remove unreasonable risks from his property.
The court found that plaintiff was partially at fault for his fall because he carried his hamper and fishing gear in front of his body, obscuring his view of his feet, thus preventing himself from spotting the hole earlier and saving himself from falling. He had visited the lakefront area many times during the years of his residence in the city. He had to have noticed that the lakefront sea wall required a high degree of care in ascending and descending, and that holes and depressions appeared due to the natural erosion of wind and water. The district court had assigned two-thirds of the fault to the plaintiff and one-third to the defendant. Finding no manifest error, the supreme court refused to disturb this allocation on review.
In Wallace v. Slidell Memorial Hospital, 509 So.2d 69 (La.App. 1st Cir.1987), plaintiff was injured when she stepped into a hole in defendant's parking lot. The *693 plaintiff had been visiting her sister in the hospital for the previous 11 days. When she left the hospital one January night at 8:15 p.m., she stepped into a hole or depression as she neared her car. The district court found the lighting insufficient, making it impossible to see the hole. The appellate court found this conclusion to be supported by the record. However, the district court also found plaintiff to have contributed to her own accident. The court of appeal affirmed the district court's allocation of fault of 90% for the defendants and 10% for the plaintiff.
In the instant case, the district court noted that the mercury lamp which was located directly above the hole in question which was designed to illuminate the specific area of the excavation was not operating at the time of the accident, but found that there was sufficient light from a nearby mercury vapor lamp or lamps to see the excavation. At least one of defendant's employees testified that the light above the hole frequently went out and that he believed it to be a wiring or electrical problem. Our review of the record discloses that the area of the excavation was peripherally lit sufficiently to illuminate the area of the excavation. The district court's conclusion in this regard is therefore not clearly wrong.
The district court also found that there was "bright yellow" flagging about two feet from the excavation lying on the ground. Although the flagging was described as bright yellow by one of defendant's supervisory employees, he conceded that it was not reflective in nature. Further, there was substantial testimony to the effect that the stands upon which the warning flags were mounted continually fell over and had to be arighted on an almost constant basis. This would support the district court's conclusion that the flagging was on the ground at the time of the accident. Further, one of defendant's employees testified that on one occasion he had ventured to within three or four feet of the hole before he had seen the flagging.
Finally, the district court concluded that the excavation had dirt piled around it, obviously a warning sign to any approaching individual that there might be an excavation. Plaintiff disputes the district court's characterization of the testimony regarding this fact, arguing that the only testimony regarding dirt piled around the hole was to the effect that at some unspecified time prior to the date of the accident there was dirt between the uncovered hole and the inoperable light pole. However, our review of the record discloses a factual basis for the district court's conclusion.
Even though, for the reasons just noted, the record supports the trial court's conclusion that the plaintiff was at fault in part for the accident, the record also supports that the defendant failed to take adequate steps to avoid an accident with the hole. Testimony by defendant's employees indicated that the lights immediately above the hole had been out of order for several weeks, that several employees had noted the potential danger which the uncovered hole presented and had complained to their supervisors about those problems, that the flags which were supposed to warn others of potential danger were continually falling due to inadequate design of the stands to which the flags were attached, that the cover for the hole had been ordered several weeks before the accident but was not completed until the morning following the accident because of a lack of materials, and that the hole was located in an area frequented by non-employees of the defendant.
Considering the foregoing review of the factual findings of the district court, we will now apply those findings to the factors announced in Watson v. State Farm Fire and Casualty Insurance Co., supra. This comparison causes us to disagree with the allocation of fault which the district court assessed.
Defendant's creation and maintenance of the condition which caused the accident cannot be said to have been inadvertent; its attempts to secure the area, though inadequate, indicate that it contemplated that the situation presented some potential danger to individuals in the area. Additionally, several of defendant's employees *694 articulated concerns over the situation and conveyed those fears to their supervisors. Also, the record does not indicate that the plaintiff was completely aware of the danger to which he was exposed. Although the district court hinted that the plaintiff may have intentionally fallen into the hole, the court did not so conclude. The conclusion that the plaintiff landed in the hole by accident, though arrived at grudgingly, is the more reasonable of those two possibilities.
The risk created by the hole, in the context of insufficient lighting, warnings, and covering, was substantial. The accident which resulted was in addition to the potential that one of the tractor-trailer rigs backing to the unloading dock could have backed into the hole resulting in substantial damage to the trailer. One of defendant's employees testified specifically that he had considered either of these risks. The risk to others created by plaintiff's inadvertance or carelessness, however, is much less significant. When considered in the context of "mutuality of the risks," it is apparent that plaintiff endangered only himself by his substandard conduct. Turner v. New Orleans Public Service, Inc., supra.
By its conduct in excavating the hole, defendant was seeking to improve its drainage and the quality of the unloading area. As part of the overall construction project, defendant was installing a concrete pad at the unloading dock where once had existed a dirt area subject to the whims of inclement weather and heavy use. Plaintiff's stated objective at the time of the accident was to locate someone to unload his trailer so that he could be on his way. Even though the district court disbelieved this assertion, we do not believe that plaintiff's wandering a short distance from his rig or merely walking about while stretching is the type of conduct which should be unanticipated, especially where the individuals who frequent that area the most are truck drivers who have spent a substantial amount of time driving immediately prior to their arrival at defendant's location. In short, the significance of the conduct by the defendant and the plaintiff are approximately equal.
We must next consider the capacities of each actor, whether superior or inferior. In this regard, we conclude that defendant had the superior capacity to avoid the accident. It had control over the premises, the planning, and the execution of the construction, as well as the day-to-day supervision over safety concerns. Plaintiff, though a professional truck driver, was capable of exercising common sense and a reasonable amount of prudence for his own safety, had a passing familiarity with the area where the accident occurred, and should have been more observant of his surroundings in order to avoid falling into a large and apparent excavation surrounded by warning flags and dirt removed from the excavation.
Finally, Watson requires that we consider any extenuating circumstances which might require either actor to proceed in haste without proper thought. The evidence indicates that the construction project was one of some duration, the lighting over the hole had been out for three to four weeks, the warning flags continually fell down, and the cover for the hole had been ordered several weeks before the accident but was not completed until the morning following the accident.
Here, the likelihood of harm was significant, the potential severity of harm was great, both from the perspective of bodily injury and property damage, and the cost of avoidance was only as expensive as the cost of properly constructed stands for the warning flags, a repaired lighting apparatus, and a cover which had already been designed and ordered, but which was not in place until the morning following plaintiff's accident.
However, plaintiff must accept responsibility for his own actions. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. Wallace v. Slidell Memorial Hospital, supra.
While the area was dimly lit, the hole and the warning flags and stands for those *695 flagseven if on the groundshould have been observable by one exercising a moderate amount of care. Even a thoroughly inattentive person should have been warned to some extent upon encountering the dirt piled around the hole.
Considering the foregoing and the Watson factors, we conclude that a more appropriate allocation of fault between the parties is that defendant is fifty percent (50%) liable for the accident at issue, while plaintiff contributed fifty percent (50%) of the fault.

DAMAGES
Plaintiff argues that the district court abused its discretion in its determination of the damages to which he was entitled. We consider each of those complaints individually.
A. Future Medicals
Plaintiff complains that the district court abused its discretion in awarding him only $16,002 for future medical expenses. Defendant argues that the damages awarded to the plaintiff were within the much discretion of the trial court.
Plaintiff asserts that he is entitled to slightly more than $37,000 to compensate him for the medical expenses which he reasonably expects to incur as a result of his accident and resulting injuries. The district court, based upon the depositions of Drs. Bundrick and Nawas, awarded approximately $16,000 on the basis of $340 per year for physical therapy, $250 per year for physician visits, and $180 per year for prescription drugs. These expenses are based upon the services which are expected to be rendered by one doctor, and the district court chose Dr. Nawas as the doctor upon which to base his estimates. The district court calculated that plaintiff could expect to incur these expenses for his life expectancy of 29 years.
Plaintiff specifically complains of the district court's use of 29 years as his life expectancy, instead of 30.1, the figure which his expert derived from mortality tables compiled by the Bureau of Labor Statistics and upon which he based his estimates of plaintiff's medical expenses. He also complains of the district court's conclusion that much of his physical therapy can be done at home at no expense, that the annual cost of physician visits would be only $250 per year, and that the district court's calculation of expected cost of prescription medications leaves out some of the medications prescribed him by Dr. Bundrick.
An injured party is entitled to an award for future medical expenses and any other damages which he suffered as the result of an accident which is the fault of another. Thames v. Zerangue, 411 So.2d 17 (La.1982); Sanders v. State Farm Mutual Automobile Insurance Co., 516 So.2d 1162 (La.App. 2d Cir.1987).
The district court's award was based, in part, upon the conclusion that the plaintiff would not need to go to both doctors for treatment. Accordingly, the award was restricted to services to be rendered by one doctor.
While we agree with the district court that plaintiff will not require the services of both orthopaedic surgeons, we conclude the court erred in failing to include the full cost of physical therapy and x-rays attendant to periodic examinations.
Further, we respectfully disagree with the district court's determination that plaintiff's annual cost for prescription drugs would be only $180. Dr. Nawas testified that the annual cost of Naprosyn, an anti-inflammatory drug which plaintiff would required to take only occasionally and when necessary, would be approximately $180. However, plaintiff was also prescribed medications for stress and sleep assistance by Dr. Bundrick. Naturally, Dr. Nawas would not need to prescribe the same medications that had already been prescribed by Dr. Bundrick. Therefore, to the extent that the district court did not include in his formula these two drugs, both of which plaintiff had been taking and could reasonably be expected to continue taking into the future, we believe the district court abused its discretion. Based upon record evidence that plaintiff refills *696 each of these prescriptions approximately four times per year and based upon the cost of acquiring those drugs at the time of trial, we believe that plaintiff's award for future medical expenses should be increased accordingly.
Finally, we believe the district court inadvertently fell into error when it used 29 years as the plaintiff's life expectancy instead of 30.1 years. The court's written opinion specifically accepted plaintiff's economic expert's testimony for the proposition that Bureau of Labor Statistics mortality tables gave plaintiff a life expectancy of 29 years, but the record clearly discloses that Dr. Bettinger testified that plaintiff's life expectancy was 30.1. Accordingly, all medical expenses which have already been awarded must be increased to reflect a longer life expectancy and those which have not yet been awarded will be so based upon 30.1 years life expectancy.
Based upon our review of the record, we conclude that the award for future medical expenses, which was set at $16,002, should be increased to $22,500.
B. General Damages
Plaintiff complains that the district court erred in awarding him only $30,000 in general damages. The defendant, without much elaboration, argues that the district court did not abuse its discretion in the amount awarded.
As a result of the accident, plaintiff sustained a compression fracture of the L-2 vertebra. Eventually, a bulging of the L-5 disc manifested itself with resulting nerve root irritation. Medical testimony indicated that plaintiff's spine will never be the same, a ten to fifteen percent whole body disability will never improve, and he will experience pain for the remainder of his life. Both doctors agreed that arthritic changes resulting from the injury are probable.
For these injuries, the district court awarded plaintiff $30,000 and in so doing, specifically rejected jurisprudence which plaintiff argued was analogous, concluding that the plaintiffs in those cases were more seriously injured than the instant plaintiff. The district court concluded that plaintiff's complaints of pain were essentially subjective and in so doing focused on testimony by Dr. Nawas that plaintiff was exaggerating his pain.
Our review of the record indicates that both doctors found objective symptoms to support the essence of plaintiff's complaints. Although Dr. Nawas did indeed testify that plaintiff was exaggerating his complaints to some extent, the doctor also testified that the exaggeration was slight and not out of the ordinary, given the plaintiff's injuries.
The standard for reviewing general damage awards to be followed by the appellate courts was set out in Reck v. Stevens, 373 So.2d 498, 501 (La.1979):
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient.
(citations omitted.)
Accepting the trial court determination that plaintiff may have exaggerated his symptoms, it is clear that he has suffered significant spinal injuries and will have continuing pain as a result thereof. Both treating physicians have ruled out surgery as a possible corrective measure. Thus, the plaintiff's pain and discomfort will continue for the remainder of his life with increasing arthritic changes, all of which will obviously limit plaintiff's enjoyment of life. For these reasons, we determine that the trial court has indeed abused its discretion in the award of general damages.
Having determined that a trial court award of damages is an abuse of discretion, our appellate function is to raise the inadequate award to the lowest amount reasonably supported by the record. Reck v. Stevens, supra; Coco v. Winston Industries, *697 Inc., 341 So.2d 332 (La.1976); Winterrowd v. Travelers Indemnity Co., 452 So.2d 269 (La.App. 2d Cir.1984), affirmed, 462 So.2d 639 (La.1985); Alexander v. Leger, 423 So.2d 731 (La.App. 3rd Cir.1982), writ denied, 430 So.2d 75 (La.1983).
Our review of the record, coupled with a comparison of fairly recent awards for damages of a nature similar to those sustained by this plaintiff, causes us to determine that $45,000 is the lowest affirmable award. See Jones v. Winston, 437 So.2d 889 (La.App. 2d Cir.1983); Lasswell v. Matlack, Inc., 527 So.2d 1199 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 104 and 532 So.2d 153 (La.1988); Jackson v. Clause, 525 So.2d 179 (La.App. 3rd Cir. 1988); Roy v. Commercial Union Insurance Co., 486 So.2d 251 (La.App. 3rd Cir. 1986); Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618 (La.App. 3rd Cir.1982); Sherlock v. Berry, 487 So.2d 555 (La.App. 4th Cir.1986), writ not considered, 489 So.2d 912 (La.1986).
C. Loss of Earning Capacity
Plaintiff argues that the district court abused its discretion in interpreting the evidence of plaintiff's loss of earning capacity and in the calculation of the damages to which plaintiff is entitled. Defendant argues no abuse of discretion by the district court.
Collateral to the issue of the appropriate damages to award to the plaintiff is plaintiff's argument that the district court erred in refusing to order the retaking of the testimony of his economic expert after it was discovered that the court reporter's transcribing equipment malfunctioned during that witness's testimony. Although he has provided this court with much statutory and jurisprudential support for his argument, plaintiff ignores the fact that he did not object when it was discovered during trial that the malfunction had occurred.
When the problem was discovered, the district court noted that it had taken careful notes during the expert's testimony and stated that the court would have no problem recreating the missing testimony. Counsel for both the plaintiff and the defendant volunteered to provide the court with their own handwritten notes of the witness's testimony and no objection was raised. Two months after trial, the plaintiff filed a motion to retake the testimony of Dr. Bettinger.
It should be noted that the missing portion was only approximately 15 minutes in length and consisted solely of defendant's cross-examination. However, at the argument on the motion to retake the expert's testimony, the plaintiff sought to expand the area of inquiry beyond those explored in the trial, to which the defendant objected.
The defendant offered to allow plaintiff to submit a single question to his expert for written reply and to stipulate that the reply would be the expert's testimony. The trial court then denied the plaintiff's motion to reopen the testimony and accepted the defendant's suggestion as a reasonable resolution of the matter. As a result, Dr. Bettinger, by a letter of approximately a page and one-half, addressed the question of the future lost earnings of the plaintiff "should he continue in his current position with Davison Trucking Company."
All of the foregoing considered, and considering as well the small amount of testimony involved, we conclude that the trial court's resolution of the issue was appropriate and not in error. Furthermore, we have extensive reasons for judgment by the trial court which obviously took into consideration the additional written testimony of Dr. Bettinger. We judge the record to be substantially complete. See Simmons v. Yelverton, 513 So.2d 504 (La. App. 2d Cir.1987).
With regard to the precise issue of loss of earning capacity, the district court apparently interpreted the expert's testimony unfavorably due to what it perceived to be the expert's "combativeness." Plaintiff argues that what the district court characterized as combativeness arose from the expert's staunch resistance when counsel for the defendant attempted to have him accept invalid assumptions.
*698 The district court apparently disbelieved the uncontradicted testimony of the plaintiff and his supervisor that he would be terminated as soon as the instant case was resolved either by settlement or by judgment. Plaintiff points out that there was no evidence that he would continue his employment with Davison and that all evidence was to the effect that his employment was only temporary.
Finally, the district court rejected in part figures from the Bureau of Labor Statistics which indicated that the average work life for an individual of plaintiff's age at the time of trial would be 17.1 years. The district court reduced that number to 15.1 because the court concluded that the bureau's statistics don't take into account the average work life of a truck driver. However, the district court assumed that the bureau's statistics were accurate for purposes of plaintiff's continuing in his present employment with Davison. Plaintiff argues that the district court had no basis for rejecting the bureau's statistics on one hand and accepting them on the other.
Awards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the court must exercise sound judicial discretion in these awards and render awards which are consistent with the record and which do not work an injustice on either party. Robinson v. Graves, 343 So.2d 147 (La. 1977); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).
We first take issue with the district court's conclusion that plaintiff's employment with Davison Transport would continue, notwithstanding testimony by plaintiff's supervisor that the position was temporary and would end following a settlement favorable to the plaintiff or a judgment in his favor. Indeed, all of the evidence presented indicated that plaintiff's present job with Davison consists of "make work." The evidence further indicates that there was no need for any employee to perform those "duties" presently being performed by the plaintiff and that Davison Transport was continuing plaintiff in their employ only to help him through a difficult financial time. We conclude that the trial court clearly erred in rejecting this evidence.
The medical and vocational evidence indicates that as a result of his injuries and due to his age, educational background, and training, plaintiff is capable only of menial labor paying no more than approximately $5 per hour. The record reflects that the plaintiff's work expectancy is 17.1 years. As we have noted, we conclude that the plaintiff will be terminated by his employer at the conclusion of this litigation. Plaintiff's economic expert testified that if plaintiff retained his current job at Davison Transport, his loss of future earnings would be just under $240,000. This expert further testified that if he is not retained and works at about $5 an hour, the present value of his lost wages and fringe benefits would be just under $545,000. In evaluating this testimony, we consider that the trial court was not impressed with this expert and that this was the only economic evidence at the trial.
Considering this economic evidence and the trial court's assessment of it and given the inherently speculative nature of damages for loss of future earning capacity, we conclude that $300,000 is the lowest affirmable award on this record.

CONCLUSION
For the above and foregoing reasons, we will amend the district court judgment to reflect that plaintiff's damages for future medical expenses are increased to Twenty-two Thousand Five Hundred Dollars ($22,500); plaintiff's general damages are increased to Forty-five Thousand Dollars ($45,000); plaintiff's damages for loss of future earning capacity are increased to Three Hundred Thousand Dollars ($300,000); and plaintiff's degree of fault will be assessed at fifty percent (50%) rather than eighty percent (80%). For the sake of clarity, we will therefore amend and recast the judgment herein as follows:
*699 IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, SIDNEY MICHAEL NICHOLS, and against the defendant, STONE CONTAINER CORPORATION, in the total amount of Three Hundred Ninety-four Thousand Two Hundred Fifty-four and 16/100 Dollars ($394,254.16), together with legal interest thereon from date of judicial demand until paid (being Three Hundred Thousand Dollars ($300,000) for loss of future wages, Six Thousand Five Hundred Forty-seven and 16/100 Dollars ($6,547.16) for past medical expenses, Twenty-two Thousand Five Hundred ($22,500) for future medical expenses, and Forty-five Thousand ($45,000) for general damages).
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the foregoing damages be reduced by the fifty percent (50%) degree of negligence attributed to the plaintiff, SIDNEY MICHAEL NICHOLS (fifty percent (50%) of the negligence is attributed to the defendant, STONE CONTAINER CORPORATION).
All costs of this litigation are assessed against the defendant, STONE CONTAINER CORPORATION.
AFFIRMED IN PART, AMENDED IN PART AND RECAST, AND AFFIRMED AS AMENDED.