343 So.2d 147 (1977)
Carolyn Ann ROBINSON and Frank J. Tornabene
v.
Robert GRAVES, Jr., and New Orleans Public Service, Inc.
No. 58304.
Supreme Court of Louisiana.
February 28, 1977.
Gerald J. Leydecker, Paul J. Galuszka, New Orleans, for plaintiffs-appellants.
C. B. Ogden, II, New Orleans, for defendants-appellees.
DIXON, Justice.
Plaintiff Carolyn Ann Robinson was a passenger in a taxicab driven by Frank J. Tornabene on October 16, 1971 when the cab was rear ended by a New Orleans Public Service streetcar in the 600 block of Carondelet Street. As a result of injuries sustained in the collision, plaintiff filed suit against these defendants and the trial court awarded damages to the plaintiff in the amount of $159,532.00. Defendants appealed suspensively contesting the amount of the award. The Fourth Circuit Court of Appeal affirmed the judgment of the trial court in most respects, but reduced the trial court's award for loss of future wages from $82,000.00 to $33,240.18. Robinson v. Graves, 332 So.2d 303 (La.App. 4th Cir. 1976). This court granted writs on September 24, 1976 to review the judgment of the Court of Appeal.
The sole issue for consideration is whether the Court of Appeal erred in reducing the award for future loss of wages. Prior to the accident plaintiff was employed at Barnett's Furniture Company as an assistant collection manager at a salary of $400.00 a month plus overtime. After the accident, when she returned to work in January, 1972, plaintiff was promoted to the position of assistant credit manager at a salary of $425.00 a month. At this same time her boss, Mr. McNeil, began to train her for the job of credit manager, and in May of 1972 her salary was increased to $500.00 a month. Plaintiff stopped work in February, 1973 just prior to her first back *148 operation. Plaintiff attempted to return to her job at Barnett's in September, 1973 but was only able to work for three days due to the injuries resulting from the accident and the after-effects of her first operation. Trial was held in the district court on December 11, 1974 and January 16, 1975 and the trial judge rendered judgment on January 23, 1975.
In order to establish her future loss of earnings, plaintiff offered the testimony of three witnesses. Miss Sarah Nunez, president of Nunez Employment Service, testified that the plaintiff could not pass the physical given by a number of companies and that for the work the plaintiff could perform she would be paid the minimum wage prevailing at that time ($2.00 an hour).
Mr. McNeil, who was training the plaintiff for the job of credit manager, testified as follows:
"Carolyn Brown [the plaintiff] was a very good employee. She had had credit experience before she came to work for Barnett's. I was training her, she was not just working as Assistant Manager, I was training her to be promoted to Credit Manager.
"She was responding very good. She had gotten through all the phases of collections and credit, approving credit, all detail work involving computer and everything; progressing very well.
"Her attitude was very good, very good.
"Her attendance record was real good, it was excellent until the accident; and after that it was spotty because of her injury and everything. ". . .
"Q Could you give us an idea as compared with other employees, other people working there as to what her increase would be through today if she would have continued working?
"A I think the best way I could answer that is she was training to be Credit Manager and I'd have to quote salaries for that and Credit Manager at that time was making $800.00 a month. This was the job she was training for.
"Q Do you feel that she was qualified to become a Credit Manager?
"A At the time, yes, sir.
"Q Do you feel that she would have become the Credit Manager had she continued to work?
"A I would suppose so.
"Q Do you feel her salary would have been increased to $800.00?
"A It could have been; yes, sir."
Peter Bondy, an actuary, also testified for the plaintiff. He computed the loss of future earnings by taking the plaintiff's monthly earning capacity (computed at $2.10 an hour), deducting that figure from what the plaintiff would have been earning had she not been injured, and then taking into account a 6% discount rate and a 3% inflation rate and computing this figure over the plaintiff's expected work life.
The dispute here concerns the amount that the plaintiff would have been earning had she not been injured. Competent evidence was adduced that she was earning $500.00 a month when she left her employment and probably would have been earning $800.00 a month had she stayed on and completed her training for the job of credit manager. The trial judge, in his discretion, used a figure of $700.00 a month and thereby determined that the plaintiff's loss of earnings was $82,000.00. The Court of Appeal found that the "loss of earnings testimony based on the possibility that plaintiff would become credit manager at some time in the future at $700.00 or $800.00 per month is speculative" and reduced the loss of future earnings to $33,240.18 (based on the $500.00 a month salary). 332 So.2d at 308.
Civil Code article 1934 dictates that in the assessment of damages resulting from offenses and quasi-offenses "much discretion must be left to the judge or jury." Unless the record demonstrates that the trial court abused this "much discretion," the appellate court should not disturb the award. Coco v. Winston Industries, 341 So.2d 332 (La.1976) and cases cited therein; Bitoun v. Landry, 302 So.2d 278 (La.1974); Fox v. State Farm *149 Mutual Automobile Insurance Co., 288 So.2d 42 (La.1974).
Future loss of earnings cannot be calculated with absolute certainty; this court has recognized that damages for the loss of future earnings are somewhat speculative in character. See e.g., Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). Absent an abuse of discretion by the trier of fact, however, this degree of uncertainty does not permit the reviewing court to substitute its judgment for that of the trial court merely because the reviewing court believes that a different award would have been more appropriate. As this court stated in Bitoun v. Landry, supra:
". . . The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down." 302 So.2d at 279.
In the case before us now, the testimony of plaintiff's superior, Mr. McNeil, established that the plaintiff was a reliable competent worker, and was training to become credit manager. He indicated that she was qualified to become credit manager and probably would have assumed that position had she not been injured. He also testified that the salary of a credit manager was $800.00 a month. Far from abusing his discretion, the trial judge soundly exercised his discretion and in an attempt to render a judgment fair to both the litigants settled on a figure of $700.00 a month as the plaintiff's probable future salary and thus computed plaintiff's future loss of earnings, properly discounted, at $82,000.00.
There was no abuse of discretion by the trial judge. The award of the trial court was "reasonably supported by the evidence and justifiable inferences from the evidence before it." Bitoun v. Landry, supra, 302 So.2d at 279. See also Coco v. Winston Industries, supra. It was error for the Court of Appeal to substitute its judgment for that of the trial judge.
For these reasons, the judgment of the Court of Appeal is reversed and the judgment of the district court is reinstated, at defendants' cost.
SUMMERS, J., dissents. I find no error of Law in the judgment of the Court of Appeal.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I agree with the finding of the court of appeal that an award of loss of future earnings predicated on the possibility that plaintiff might become credit manager at some time in the future at a salary of $700 or $800 a month is too speculative. Accordingly, I respectfully dissent.