625 So.2d 295 (1993)
Phillip TRAHAN, et al.
v.
TEXACO, INC., XYZ Boat Rental Company, Tim Boudreaux and John Doe.
No. 93-CA-0039.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1993.
David B. Allen, Samanie, Barnes & Allen, Houma, for appellant.
Daniel J. Caruso, Robert L. Redfearn, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, for appellees.
Before CIACCIO, PLOTKIN and WALTZER, JJ.
CIACCIO, Judge.
In this maritime action, plaintiff, Mary Trahan, appeals the dismissal of her loss of consortium claim on an exception of no cause of action granted in favor of defendants, Texaco, Inc. and James Gray, Inc. Finding no error in the judgment of the trial court, we affirm.

FACTS
On August 12, 1990, Philip Trahan was employed as captain of the F/V SEA WAVE, and was trawling in the territorial waters of Louisiana when the nets of the vessel became entangled in a piece of pipe. Trahan proceeded to a nearby Texaco oil platform to obtain assistance in removing the pipe from his nets. He was assisted by Texaco employees as well as a crewboat owned and operated by James Gray, Inc. During the course of removing the pipe, a rope and hook came loose from the pipe and struck Trahan in the neck and back.
*296 As a result of his injuries, Philip Trahan and his wife, Mary Trahan, subsequently brought this suit in state court under the savings to suitors clause against Texaco and James Gray, neither of which are Trahan's employer. In their petition, plaintiffs alleged a cause of action based on general maritime negligence, and Mrs. Trahan asserted a claim for loss of consortium.
Defendants filed a peremptory exception of no cause of action, arguing that Mrs. Trahan's loss of consortium claim is not recoverable under general maritime law, citing Miles v. Apex Marine, Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The trial court granted the exception, and plaintiff, Mary Trahan, now appeals.

DISCUSSION
The sole issue presented for our review is whether damages for loss of consortium are recoverable against a non-employer third party defendant under general maritime law.
On appeal, plaintiff contends that a loss of consortium claim brought against non-employer third parties is recoverable under general maritime law and the holding in Miles is therefore distinguishable on that basis.
In Miles, supra, the Supreme Court squarely held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." The Court emphasized the need for uniformity in both claims brought under the Jones Act and the general maritime law. "It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." Miles, supra, 498 U.S. at 32, 111 S.Ct. at 326.
The holding in Miles has been extended by federal courts to a spouse's claim for recovery for loss of consortium under general maritime law involving the nonfatal injury of a Jones Act seaman. See, Cater v. Placid Oil Co., 760 F.Supp. 568 (E.D.La.1991). In addition, Miles has been followed in a seaman's suit where no Jones Act claim is involved. In Duplantis v. Texaco, Inc., 771 F.Supp. 787 (E.D.La.1991), a seaman filed an action against a third party, Texaco, under the general maritime law, seeking to recover damages for injuries he sustained when he attempted to free his fishing nets from submerged obstructions allegedly left by Texaco. The district court held that the general maritime law does not allow a spousal claim for loss of consortium against a general maritime law negligence defendant.
This issue was recently addressed by a panel of this court in Phillips v. Water Towing, et al., 620 So.2d 1387 (La.App. 4th Cir. 1993). In that case, plaintiff was injured while working aboard a vessel in the Mississippi River and asserted a Jones Act claim against his employer as well as a negligence cause of action against a third party manufacturer. Included in plaintiff's petition was his spouse's claim for loss of consortium. The trial court held that plaintiff had no cause of action for loss of consortium, and this Court affirmed, stating:
Considering Miles and its progeny, we find that the wife of an injured seaman has no cause of action for loss of consortium under the general maritime law.
In the present case, there is no dispute that plaintiff was a seaman at the time the accident occurred, and as such, the federal substantive maritime law applies. However, on appeal, plaintiff contends that this suit, which was not brought against plaintiff's employer, does not assert a traditional Jones Act claim nor does it involve an unseaworthiness remedy. Rather, plaintiff contends that he is asserting a general maritime negligence claim against third parties to which the holding in Miles does not apply.
In support of this position, plaintiff cites Rebstock v. Sonat Offshore Drilling, 764 F.Supp. 75 (E.D.La.1991). In Rebstock, the district court held that loss of consortium damages are recoverable in a general maritime action against third parties, relying on Tullos v. Resource Drilling, Inc., 750 F.2d 380 (5th Cir.1985). In Tullos, the plaintiff filed suit against his Jones Act employer and against a third party defendant under general maritime law. The court held that a claim for loss of consortium was not recoverable *297 under the Jones Act, but could be recovered under general maritime law, citing Cruz v. Hendy International Co., 638 F.2d 719 (5th Cir.1981). Tullos, 750 F.2d at 285.
However, the decision in Cruz was subsequently overruled by the federal appeals court, on the basis that the holding in Miles precludes a claim for loss of consortium under general maritime law. Murray v. Anthony J. Bertucci Construction Co., Inc., 958 F.2d 127, 132 (5th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992); Michel v. Total Transportation, Inc., 957 F.2d 186, 191 (5th Cir.1992). Moreover, this court has followed the holdings of both Murray and Michel. See, Fortenberry v. ODECO, Inc., 607 So.2d 950, 957 (La.App. 4th Cir.1992), (wife's claim for loss of consortium is not recognized under Jones Act or general maritime law); Dickey v. Ocean Drilling & Exploration, 598 So.2d 1259 (La. App. 4th Cir.1992), (children of injured seaman have no cause of action for loss of society under the general maritime law).
Mrs. Trahan also relies on American Export Lines, Inc. v. Alvez, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) to support her position. The Alvez case did recognize a cause of action under general maritime law for the recovery of loss of society damages by the spouse of a longshoreman injured aboard a vessel in state territorial waters. However, the court in Alvez relied on Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) and Miles specifically limited Gaudet to its facts. The Miles court found the "holding of Gaudet applies only in territorial waters, and it applies only to longshoremen." Miles, 498 U.S. at 31, 111 S.Ct. at 325. Alvez, which merely extends Gaudet to personal injury actions, is likewise limited by the decision in Miles. Murray, supra at 130.
For these reasons, we find both Alvez and Rebstock unsupportive of appellant's arguments. Based on the holding in Miles and its progeny, as well as the Phillips case from this court, which we are bound to follow, we conclude that the spouse of an injured seaman has no cause of action for loss of consortium against a non-employer third party defendant under federal general maritime law. Accordingly, we affirm the trial court's judgment.
AFFIRMED.
WALTZER, J., concurs with reason.
WALTZER, Judge, concurs with written reasons.
Individuals working in the maritime and related industries have a number of causes of actions and remedies available to them: state worker's compensation law, state wrongful death law, the Jones Act, the Longshoremen's and Harbor Workers' Compensation Act, the Outer Continental Shelf Lands Act, the Death on the High Seas Act, general maritime law which is composed of maintenance and cure law, unseaworthiness law, and general maritime negligence law. In order to understand the interrelationship of these various rights and remedies both a review of the available remedies and a method of analysis encompassing all of them is necessary.
Generally, the Jones Act provides tort remedies for seamen. In 1926 in International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), longshoremen were declared to be "seamen" and within the purview of the Jones Act when injured on a navigable waterway. However, after its passage the Longshoremen's and Harbor Workers' Compensation Act became the exclusive remedy against their employer by the injured longshoremen and effectively withdrew them from the benefits of the Jones Act. The Jones Act became available only to "true seamen".
The Longshoremen's and Harbor Workers' Compensation Act was intended to provide compensation for a class of employees, harbor workers, at work on a vessel in navigable waters, who although they might be classed as "seamen" were nonetheless regarded as distinct from the members of a "crew". They served on vessels as laborers, at the type of work performed by longshoremen and harbor workers, and thus are distinguished from those employees on the vessel who are naturally and primarily on board to aid in navigation. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. *298 1086 (1917) resulted in the doctrine that state law could not constitutionally afford compensation to maritime employees. The gap created by Jensen was filled by the passage of the Longshoremen's and Harbor Workers' Compensation Act. It is roughly the maritime equivalent of state workers' compensation laws.
Formerly under general maritime law there was no liability for wrongful death. The Harrisburg, 119 U.S. 199, 213, 7 S.Ct. 140, 146, 30 L.Ed. 358, 362 (1886). In the absence of statute, it was held there could be no recovery in the admiralty courts for death on the high seas. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). In 1920, Congress pass the Death on the High Seas Act. The Death on the High Seas Act gives a right of action for pecuniary losses to the personal representative of the deceased for the exclusive benefit of the wife, husband, parent, child or dependent relative of the deceased against the vessel, person, or corporation liable for the death, when the death is caused by a wrongful act on the high seas beyond a marine league (approximately 3 miles) from the shore of any state, the District of Columbia, or the territories or dependencies of the United States. The act does not apply to injuries resulting in death occurring on water within the territorial waters of any state, i.e. within a marine league.
The Death on the High Seas Act is not applicable to injuries involving wrongful deaths on artificial island drilling rigs located more than a marine league off the Louisiana coast. The islands were not erected primarily as navigational aids. In enacting the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., Congress decided that these artificial islands, although surrounded by the high seas, were not themselves to be considered within maritime jurisdiction. The Outer Continental Shelf Lands Act, supplemented by the law of the adjacent State, furnishes the appropriate remedy.
The Death on the High Seas Act, however, resulted in a gap such that longshoremen and harbor workers who died on vessels a marine league out from the state had a wrongful death action, whereas longshoremen and harbor workers doing the same jobs and killed in the same way who died on land, on the dock, on a docked vessel, or on a vessel within 3 miles of the state shore, i.e. the state's territorial waters, had no wrongful death action.
Accordingly, in 1970 in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970), the United States Supreme Court found that an action does lie under the general maritime law for wrongful death, expressly overruling The Harrisburg, above. In Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1973), the Supreme Court distinguished the recovery allowed under general maritime law wrongful death actions from the recovery allowed under Death on the High Seas Act wrongful death actions. Because the Death on the High Seas Act only allows for "pecuniary losses" courts have interpreted the statutory language to mean that loss of society is not recoverable under DOSHA. In contrast to DOSHA wrongful death actions, the Court stated that while only recovery for "pecuniary loss" is allowed under the express language of the Death on the High Seas Act, a wrongful death action under general maritime law allows for loss of society and funeral expenses:
"Moragne, on the other hand, requires that the shape of the new maritime wrongful-death remedy (not a statutory creation but judge-made, see The Tungus v. Skovgaard, 358 U.S. 588, 611, 70 S.Ct. 503, [516] 3 L.Ed.2d 524 (1959) (opinion by Brennan, J.)) be guided by the principle of maritime law that "certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules," The Sea Gull, 21 F.Cas. 909 (No. 12,578) (C.C.Md.1865), quoted in Moragne, 398 U.S. at 387, 90 S.Ct., at 1781. Since the policy underlying the remedy is to insure compensation of the dependents for their losses resulting from the decedent's death, the remedy should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries. No statutory language or `established and inflexible *299 rules' of maritime law require a contrary conclusion.
* * * * * *
... under the maritime wrongful-death remedy, the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses.
Recovery for loss of support has been universally recognized, and includes all the financial contributions that the decedent would have made to his dependents had he lived. Similarly the overwhelming majority of state wrongful-death acts and courts interpreting the Death on the High Seas Act have permitted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death. Such services include, for example, the nurture, training, education, and guidance that a child would have received had not the parent been wrongfully killed. Services the decedent performed at home or for his spouse are also compensable.
Compensation for loss of society, however, presents a closer question. The term `society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. Unquestionably, the deprivation of these benefits by wrongful death is a grave loss to the decedent's dependents. Despite this fact, a number of early wrongful-death statutes were interpreted by courts to preclude recovery for these losses on the ground that the statutes were intended to provide compensation only for `pecuniary losses' and that the loss of society is not such an economic loss. Other wrongful-death statutes contain express language limiting recovery to pecuniary losses; for example, the Death on the High Seas Act limits recovery to `a fair and just compensation for the pecuniary loss sustained by the person for whose benefit the suit is brought ...' 46 U.S.C. § 762 (emphasis added), and consequently has been construed to exclude recovery for the loss of society.
A clear majority of States, on the other hand, have rejected such a narrow view of damages, and, either by express statutory provision or by judicial construction, permit recovery for loss of society. This expansion of damages recoverable under wrongful-death statutes to include loss of society has led one commentator to observe that `[w]hether such damages are classified as "pecuniary", or recognized and allowed as nonpecuniary, the recent trend is unmistakably in favor of permitting such recovery.' Speiser Wrongful Death 218. Thus, our decision to permit recovery for loss of society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes. But if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show `special solicitude' for those who are injured within its jurisdiction. (398 U.S. at 583-588, 94 S.Ct. at 814-816).
* * * * * *
Finally, in addition to recovery for loss of support, services, and society, damages for funeral expenses may be awarded under the maritime wrongful-death remedy in circumstances where the decedent's dependents have either paid for the funeral or are liable for its payment. A majority of States provided for such recovery under their wrongful-death statutes. Furthermore, although there is a conflict over whether funeral expenses are compensable under the Death on the High Seas Act, compare The Culberson, 61 F.2d 194 (CA3 1932), with Moore v. the OS Fram, 226 F.Supp. 816 (SD Tex.1963) aff'd, sub nom, Wilhelm Seafoods, Inc. v. Moore, 328 F.2d 868 (CA5 1964), it is clear that funeral expenses were permitted under the general maritime law prior to The Harrisburg, see e.g., Hollyday v. The David Reeves, 12 F.Cas. 386 (No. 6,625) (Md.1879). We therefore find no persuasive reason for not following the earlier admiralty rule and thus hold that funeral expenses are compensable." (398 U.S. at 591, 94 S.Ct. at 818).
The Gaudet case, above, involved the widow of a seaman in territorial waters, i.e.
*300 State territorial waters within a marine league, bringing a wrongful death action based upon unseaworthiness. Gaudet returned to the lower court for further proceedings. See: 463 F.2d 1331 (5th Cir.1972). Sea-Land filed motions to dismiss on the grounds of res judicata and failure to state a claim upon which relief could be granted. The Fifth Circuit found:
"... we hold that Mrs. Gaudet retained a compensable cause of action for Mr. Gaudet's death wholly apart from and not extinguished by the latter's recovery for his personal injuries ..." (at 1332).
The court further stated:
"[t]he personal injury and wrongful death suits assert two distinct causes of action designed to compensate for two separate lossesthe first for the loss and suffering of the injured while he lived, and the second for the losses to his beneficiaries on account of his death ... Quite obviously the jury verdict recovered by Mr. Gaudet during his lifetime did not include damages done to others by his death which had not yet occurred ... the wrongful death action Mrs. Gaudet now attempts to bring never belonged to Mr. Gaudet and in fact did not even accrue until his death." (at 1332-1334).
Gaudet was filed prior to 1972 and was based upon a claim on unseaworthiness. In 1972 Congress amended 33 U.S.C. § 905(b) to add:
"The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."
In Miles v. Apex, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Supreme Court found that there was no recovery for loss of society in a general maritime action based on unseaworthiness for the wrongful death of a Jones Act seaman against his employer.
As so well stated by the court in Mussa v. Cleveland Tankers, 802 F.Supp. 84 (E.D.Mich.1992):
"Miles was decided in the context of a Jones Act seaman (via his parent) suing his employer under the Jones Act for negligence and under general maritime law for unseaworthiness ... simply put, under the Miles Court's view, there should be no reason why a Jones Act seaman, unable to sue his employer for nonpecuniary damages directly under a Jones Act negligence claim, could sue his employer for such damages under a related general maritime law claim for unseaworthiness.
Total's argument that Miles compels a similar result in the present case goes too far. Such argument seeks to extend Miles' policy of uniformity to situations, such as the one presented in the cases at bar, where Jones Act seamen are not suing their employer under related Jones Act and general maritime law claims, but instead, are suing a third-party, here Total, under a single general maritime claim of negligence ... A Louisiana district court case, decided after Miles, supports this conclusion. In Rebstock v. Sonat Offshore Drilling, 764 F.Supp. 75 (E.D.La.1991), a Jones Act seaman, and his spouse, asserted negligence claims against a defendant... third party who was not the plaintiff-seaman's employer, in relation to the plaintiff-seaman's injury. The defendant moved to dismiss the loss of consortium claim asserted against it by the plaintiff spouse. The district court denied such motion. In denying the motion, the court noted that Miles did not compel a different result, as in Miles the seaman had sued his employer under the Jones Act and under general maritime law for unseaworthiness and that the Court's opinion did not concern negligence actions under general maritime law against third parties. Id. at 76. The Court further noted that the facts in the case before it were highly similar to a pre-Miles decision of the Fifth Circuit, Tullos v. Resource Drilling, Inc., 750 F.2d 380, 386 (5th Cir. 1985), wherein a spouse of a seaman was allowed to recover loss of consortium damages against a third party under a general maritime law negligence claim. Id." (at 86-87).
In Rebstock, above, the court further notes that:
"Under section 5(b) of the Longshore and Harbor Workers' Act, 33 U.S.C. section *301 901-950, which permits a longshoreman to sue a nonemployer vessel owner for negligence, the spouse of the longshoreman is permitted to recover loss of consortium damages. See T. Schoenbaum, Admiralty and Maritime Law, section 6-10, at 221." (at 76).
In Dryden v. Calk, 771 F.Supp. 179 (E.D.Tex.1991) the court noted that:
"`The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen. Gaudet did not consider the preclusive effect of the Jones Act for death of true seamen.' Miles, 498 U.S. at 31, 111 S.Ct. at 325. Gaudet applies only to longshoremen. The case now before this court involves a seaman." (at 181).
Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127, 131 (5th Cir.1992) finds that Miles, above, holds "that only survivors of longshoremen killed in territorial waters may recover nonpecuniary damages under Gaudet".
Loss of consortium damages only presently exist in one very limited case. That case is where the injured person is a longshore/harborworker who is not a "true seaman", i.e. one who aids in navigation of the vessel, who is injured within state territorial waters, i.e. within a marine league or roughly 3 miles of shore, who is suing in general maritime negligence, not in general maritime unseaworthiness or any statutory remedies, and who is suing a third-party, not his employer. This is the only case where loss of consortium damages still occur. See: Dissent, Waltzer, J. Vedros v. Public Grain Elevator, 620 So.2d 1376 (La.App. 4th, 1993).
Applying the above method of analysis to the instant case, Mr. Trahan was a captain of a vessel at the time of the injury. A captain is a true seaman, namely one who aids in the navigation of the vessel, therefore loss of consortium damages are not allowed.
I note that this result is in accordance with this court's prior ruling in Dickey v. Ocean Drilling and Exploration, 598 So.2d 1259 (La.App. 4th, 1992), because the injured worker in Dickey was a Jones Act seaman.