646 So.2d 1249 (1994)
Cornelius James BRIDGETT and Brenda A. Bridgett,
v.
ODECO, INC. and Tidex, Inc.
Nos. 93-CA-1536, 94-CA-0112.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
Rehearing Denied January 18, 1995.
*1250 Stephen P. Bruno, Bruno and Bruno, New Orleans, for plaintiffs, Cornelius J. Bridgett & Brenda A. Bridgett.
Michael A. McGlone, Kent B. Ryan, Lemle & Kelleher, New Orleans, for defendants, Odeco, Inc. and Murphy Exploration and Production Co. in No. 93-CA-1536.
William B. Gibbens, III, Charles A. Cerise, Jr., Gelpi, Sullivan, Carroll & Gibbens, New Orleans, for defendants, Odeco, Inc. and Tidex, Inc. in No. 94-CA-0112.
Before BYRNES, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
This case comes before the court on a consolidation of two appeals. In the first appeal, number 93-CA-1536, plaintiff, Cornelius Bridgett, appeals the trial court's dismissal on March 12, 1993, of his claim for punitive damages. In the second appeal, number 94-CA-0112, defendants, Odeco, Inc. and Tidex, Inc., appeal various aspects of the trial court's judgment in favor of plaintiff rendered on August 18, 1993. In his response to that appeal, plaintiff also attacks various portions of the judgment. For the reasons that follow, we amend the judgment of the trial court in two respects and, as amended, affirm the decision of the trial court.

FACTS
On May 15, 1990, plaintiff, a Jones Act seaman serving in the course and scope of his employment aboard the M/V CRIMSON TIDE, a vessel owned by his employer Tidex, was attempting to tie off to the M/V OCEAN STAR, a semi-submersible jack-up rig owned by Odeco, in the coastal waters of Louisiana. Plaintiff was injured when the mooring line of the M/V OCEAN STAR parted and struck him in the knee.
As a result of this accident, plaintiff sustained severe damage to his left knee. Plaintiff's anterior cruciate, posterior cruciate, and medial collateral ligaments were completely ruptured, and each required reconstructive surgery. In addition, plaintiff's lateral meniscus was completely disrupted and thus had to be removed. Plaintiff also sustained compression-type lateral tibial plateau fractures. Plaintiff underwent surgery to repair the damage to his knee on May 23, 1990. Following surgery, plaintiff was required to wear a cast for eight weeks, after which he was placed in a knee brace. Plaintiff was not allowed to place weight on his left knee until August of 1990. Additionally, arthroscopic surgery was later performed to remove scar tissue and loose bodies from plaintiff's knee.
Plaintiff filed suit on February 5, 1991, alleging that his injuries were caused by the joint and concurrent negligence of Odeco, as the owner of the M/V OCEAN STAR, and Tidex, his Jones Act employer and owner of the M/V CRIMSON TIDE. Over two years later and after several continuances of the trial, plaintiff filed a Supplemental and Amended Petition for Damages, asserting, for the first time, a claim for punitive damages against Odeco and its successor corporation, Murphy Exploration and Production Co. In response, Odeco and Murphy filed an exception of No Cause of Action, arguing that the general maritime law does not provide for awards of punitive damages. Plaintiff's *1251 counsel was served with a copy of the exception on April 17, 1993, by the Orleans Parish Civil Sheriff and a copy of the exception was mailed to plaintiff's counsel on April 23, 1993. In the letter accompanying the copy of the exception, defense counsel advised that the exception was set for hearing on May 14, 1993, at 9:00 a.m. Plaintiff's counsel filed no opposition to the exception and failed to attend the hearing. The trial court sustained the exception and signed a judgment in accordance therewith on May 17, 1993. Plaintiff filed a Motion for New Trial on May 28, 1993. The trial court denied plaintiff's motion as not being timely filed. Plaintiff filed an appeal on June 17, 1993, contesting the judgment dismissing the punitive damage claim.
The matter, absent the punitive damage claim,[1] was tried to a jury on August 16-18, 1993. The jury returned a verdict finding Odeco 75% at fault and Tidex 25% at fault. Plaintiff was awarded $361,462 in damages, itemized as follows: $48,000 for past pain and suffering, $75,000 for future pain and suffering, $44,000 for past lost earnings (less a credit of $9,538), $172,000 for loss of future earning capacity, and $32,000 for future medical expenses. Plaintiff was awarded pre-judgment interest against Odeco on his claims for past pain and suffering and past lost wages, measured from date of injury. Additionally, plaintiff was awarded judicial interest against Odeco and Tidex for his remaining claims (i.e., future pain and suffering, future loss of earning capacity, and future medical expenses), measured from date of judgment.
Plaintiff brought an appeal alleging that the trial court erred in dismissing his claim for punitive damages. That appeal was consolidated with defendants' appeal attacking various aspects of the jury verdict. In this response to defendants' appeal, plaintiff raises two additional issues.

ISSUES
Plaintiff and defendants raise a number of issues before this Court:
1. Whether plaintiff is entitled to recover punitive damages under the general maritime law.
2. Whether the trial court erred in admitting testimony of an expert witness as to plaintiff's potential loss of future earning capacity.
3. Whether the jury erred in awarding plaintiff $32,000 for future medical expenses.
4. Whether the jury abused its discretion in awarding plaintiff only $48,000 for past pain and suffering and $75,000 for future pain and suffering.
5. Whether the trial court erred in failing to award pre-judgment interest.
We will address each of these issues in turn.

ANALYSIS

Punitive Damages Claim
Plaintiff has appealed the trial court's dismissal of his claim for punitive damages. As a preliminary matter, we must address defendants' argument that plaintiff waived his right to appeal the trial court's granting of this exception by not opposing it in the trial court. As noted above, although plaintiff was served with a copy of the exception and had ample notice of the proceedings, he did not file a memorandum in opposition to the exception, nor did he appear at the hearing to contest the exception. Plaintiff's motion for a new trial on the punitive damages claim was denied by the trial court as untimely.
We cannot accept defendants' argument that plaintiff has waived his right to appeal this issue. It is true that a court of appeal generally will not consider a matter that has not been submitted to the trial court. Unif. R.Ct.App. 1-3 ("The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error...."); Richardson v. Stan Weber & Assocs., Inc., 400 So.2d 1196, 1197 (La.App. 1st Cir.1981). However, that is not the case here. The question of punitive damages is properly before this court on appeal because plaintiff *1252 filed an amended petition praying for punitive damages and this placed the matter before the trial court. Once the trial court rendered a judgment against plaintiff on that issue, plaintiff was entitled to appeal that decision to this court. We turn now to the merits of this issue.
Punitive damages are classified as non-pecuniary damages.[2] The benchmark case addressing seaman remedies is Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). In Miles, the Supreme Court confronted the question of whether a deceased seaman's surviving parent could recover loss of society damages for the wrongful death of a seaman under the Jones Act, 46 U.S.C.App. § 688. In reaching its decision, the Court reasoned that Congress, in the Death on the High Seas Act, 46 U.S.C.App. § 761 et seq. (hereinafter "DOHSA"), spoke directly to the question of recoverable damages, limiting recoverable damages in suits for wrongful death on the high seas to pecuniary losses. The Court observed that "[t]his explicit limitation forecloses recovery for non-pecuniary loss, such as loss of society in a general maritime action." Id. at 31, 111 S.Ct. at 325. In addition, the Court found that although the Jones Act does not have an express provision limiting recoverable losses to pecuniary losses, Congress incorporated the substantive provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 51-59, into the Jones Act, thereby indicating Congressional intent to incorporate the pecuniary limitation on damages as well. Considering this, the Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." Id. In applying the same principle to the general maritime law, the Court opined that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." Id. at 32-33, 111 S.Ct. at 326. The Court held that there was no right to a claim for loss of society under the general maritime law because there is no right to such under the Jones Act. The apparent intent of the Court in Miles was to impose a uniform rule on all actions for the wrongful death of a seaman, whether brought under DOHSA, the Jones Act, or the general maritime law. See id. The Court made this intent clear when it stated: "Today, we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." Id.
The principles set forth by the Supreme Court in Miles have been applied to claims for loss of consortium. For example, in Phillips v. Water Towing, 620 So.2d 1387 (La. App.4th Cir.), writ denied, 629 So.2d 1135 (La.1993), this Court held that "[c]onsidering Miles and its progeny, we find that the wife of an injured seaman has no cause of action for loss of consortium under the general maritime law." Id. at 1390. More recently in Trahan v. Texaco, Inc., 625 So.2d 295 (La. App.4th Cir.1993), this Court concluded that "the spouse of an injured seaman has no cause of action for loss of consortium against a non-employer third party defendant under federal general maritime law." Id. at 297.
In a continuing effort to establish uniformity in maritime law, courts have applied the principles set forth in Miles to the question of whether punitive damages are recoverable in a suit brought under the general maritime law. In Miller v. American President Lines, Ltd., 989 F.2d 1450 (6th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 304, 126 L.Ed.2d 252 (La.1993), an asbestos case in which the plaintiff asserted claims of negligence and unseaworthiness, the Sixth Circuit, "[l]ooking primarily to the federal maritime statutes for guidance, [held] that punitive damages are not available in a general maritime law unseaworthiness action for the wrongful death of a seaman." Id. at 1459. And in the case of In re Waterman S.S. Corp., 780 F.Supp. 1093 (E.D.La.1992), the court held that punitive damages are not available under general maritime law, reasoning that because both DOHSA and the *1253 Jones Act restricted damages to pecuniary loses, the general maritime law should likewise restrict those losses. Id. at 1096. According to the court, "[a]llowing punitive damages under general maritime law, although they are not recoverable under the Jones Act, would create an inconsistency in the law that expands Congress' restrictions." Id. at 1096. In another case out of the Eastern District of Louisiana, Anderson v. Texaco, Inc., 797 F.Supp. 531 (E.D.La.1992), the court, again relying on Miles, dismissed plaintiff's unseaworthiness and general maritime law punitive damages claims, but allowed a punitive damage claim for failure to pay maintenance and cure. Id. at 536.
Louisiana state court cases conflict on the issue. For example, in Gray v. Texaco, Inc., 610 So.2d 1090 (La.App.3d Cir.), writ denied, 616 So.2d 686 (La.1993), the plaintiff sought to recover punitive damages for his employer's failure to provide maintenance and cure. The court, in light of the desire for consistency expressed by the Supreme Court in Miles, denied punitive damages in the maintenance and cure claim. Defendants cite this case in support of their claim that plaintiff's claim for punitive damages was properly dismissed by the trial court.
In response, plaintiff relies on this Court's decision in Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App.4th Cir.1992), writ denied, 613 So.2d 996 (La.), cert. denied, ___ U.S. ___, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993), to support his claim that punitive damages are recoverable under the general maritime law for a claim alleging unseaworthiness. In Mistich, plaintiff developed a type of leukemia as a result of exposure to hazardous levels of gamma radiation from X-rays while working as a welder on an oilfield pipelaying barge. The trial court ruled that punitive damages were available to plaintiff and awarded him such damages in the amount of $4,000,000. In holding that punitive damages are available under the general maritime law for claims based on unseaworthiness, this Court "disagreed with the proposition that after Miles punitive damages are no longer available under General Maritime Law." Id. at 935. The court noted "[t]here was no definitive federal or state appellate court decision in this circuit or state holding that punitive damages are not recoverable under the Jones Act, much less under the general maritime law." Id.
In reaching this decision, the court relied on two cases decided before the Supreme Court's decision in Miles. In Osorio v. Waterman S.S. Corp., 557 So.2d 999 (La.App. 4th Cir.), writ denied, 561 So.2d 99 (La.1990), a seaman was killed while working aboard the S/S SAM HOUSTON. The seaman's widow filed a wrongful death action against the vessel owner-employer seeking damages under DOHSA, the Jones Act, and the general maritime law. This Court, relying on In re Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981), noted that "[a]lthough there is serious doubt as to whether punitive damages are recoverable under the Jones Act or DOHSA, we are satisfied, as a matter of law, they are permitted under the general maritime law." Id. at 1008.
The second case relied on by the Mistich court was Miles v. Melrose, 882 F.2d 976 (5th Cir.1989), aff'd Miles v. Apex Marine, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). In this case, the mother of a stewart's assistant who was stabbed repeatedly by a crew member brought an action against the vessel's owner, charterer, and operator for negligence under the Jones Act and for unseaworthiness under the general maritime law. The Melrose court held that "[p]unitive damages are recoverable under the general maritime law `upon a showing of willful and wanton misconduct by the shipowner' in failing to provide a seaworthy vessel." Id. at 989 (quoting In re Complaint of Merry Shipping, 650 F.2d at 626).
Since this court made its observation in Mistich that there were no definitive appellate court cases addressing this issue, there has been considerable jurisprudential development. Many courts have now concluded that punitive damages are no longer recoverable under the general maritime law. E.g., Miller v. American President Lines, Ltd., 989 F.2d 1450, 1459 (6th Cir.1993); Anderson v. Texaco, 797 F.Supp. 531, 536 (E.D.La. 1992); Rollins v. Peterson Builders, Inc., 761 F.Supp. 943, 949-50 (D.R.I.1991); see also William J. Pallas, Comment, The Elimination *1254 of Punitive Damages for Seamen: How Far Does Miles Reach?, 18 Tul.Mar.L.J. 89, 98 n. 66 (1993) (collecting cases). In fact, the Fifth Circuit recently had occasion to review the mandate and impact of Miles. See Guevara v. Maritime Overseas Corp., 34 F.3d 1279 (5th Cir.) (per curiam), reh'g granted en banc, No. 92-4711, 1994 WL 612274 (5th Cir. Nov. 4, 1994). It noted that "four appellate courts have held that punitive damages are now unavailable under the general maritime law." Id. at 1284 (citing Horsley v. Mobil Oil Co., 15 F.3d 200 (1st Cir.1994); Miller v. American President Lines, Ltd., 989 F.2d 1450, 1454-59 (6th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); Penrod Drilling Corp. v. Williams, 868 S.W.2d 294 (Tex.1993) (per curiam); Sky Cruises, Ltd. v. Andersen, 592 So.2d 756 (Fla.Dist.Ct.App.) (per curiam), rev. denied, 601 So.2d 551 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992)). The court also cited eight federal district court cases from around the country that have reached the same conclusion. Id. at 1284 n. 8.
In fact, our research reveals that only two courts that have considered the question have concluded that punitive damages remain recoverable under the general maritime law: this circuit in Mistich and the Louisiana Third Circuit Court of Appeal in Ellender v. Texaco, Inc., 93-1803, p. 2 (La.App. 4 Cir. 6/24/94); 640 So.2d 845, 846, writ denied, 94-2339 (La. 9/30/94); 642 So.2d 883. To that extent, these decisions represent anomalous interpretations of Miles, ones that serve no purpose other than to encourage plaintiffs to engineer arguments in favor of invoking jurisdiction in these courts.[3] We can find no logic to such reasoning. Miles' wake is now clear: the great weight of law demonstrates that punitive damages are not longer recoverable under the general maritime law. Accordingly, we overrule the holding of Mistich.[4] Punitive damages shall no longer be available to a plaintiff who brings an action under the general maritime law in a court subject to this court's jurisdiction. For the foregoing reasons, the decision of the trial court granting the defendants' exception of no cause of action is affirmed.

Loss of Future Earning Capacity
In its verdict, the jury awarded plaintiff $172,000 for loss of future earning capacity. Defendants attack this award, contending that it was based in part on inadmissible hearsay evidence.
Testimony adduced at trial established that plaintiff served aboard M/V CRIMSON TIDE as a deckhand, earning $71 per day. Plaintiff argued that had he not been injured, he would have been promoted to mate and have earned $107 per day. Plaintiff testified that he had taken one part of the five-part mate's exam, although he had failed that portion of the test. However, plaintiff indicated that he had already performed many of the duties required of a mate and his wife testified that he was studying at home for his mate's license.
Dr. Melville Wolfson was accepted by the court as an expert in the field of economics and testified concerning plaintiff's loss of earning capacity. Using the figure of $71 per day for a deckhand, Wolfson indicated that plaintiff's loss of future earning capacity was $127,192. Using the figure of $107 per day for a mate, Wolfson calculated plaintiff's alternative loss of future earning capacity to be $251,072. As noted above, the jury awarded plaintiff $172,000. Defendants complain that use of $107 figure by Dr. Wolfson was in error because it constituted inadmissible hearsay. The crux of this argument stems from testimony by plaintiff that he "heard" that mates earned $107 per day:
EXAMINATION BY MR. BRUNO:
Q: Mr. Bridgett, when you were working for Tidewater in 1990I'm sorryat the time of this accident in May of 1990, how much moneywere you aware of how *1255 much money a mate was earning with Tidewater?
MR. GIBBENS: Objection. It calls for hearsay.
THE COURT: Overruled.
THE WITNESS: At that time, I had heard that it was around
MR. GIBBENS: Your Honor, he says he heard that. That's hearsay.
THE COURT: I overrule the objection. I'll make it general and continuing. Go ahead.
MR. GIBBENS: Yes, sir.
THE WITNESS: A hundred and seven dollars a day.
MR. BRUNO: No further questions. I tender for cross-examination.
THE COURT: Are you going to ask questions?
EXAMINATION BY MR. GIBBENS:
Q: You've never worked for the Tidewater Personnel Department, have you?
A: No, sir, I haven't.
Q: The only basis of your knowledge is what somebody may have told you?
A: Yes, sir.
Under the Louisiana Code of Evidence, hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to provide the truth of the matter asserted." La.C.E. art. 801(C). Such evidence "is not admissible except as otherwise provided by this Code or other legislation." La.C.E. art. 802. According to defendants, plaintiff's testimony constitutes hearsay because it was the statement of an out-of-court declarant admitted to prove the truth of the matter asserted, i.e., that mates earn $107 per day. Defendants maintain that such testimony is not admissible under any exceptions to the rule against hearsay. In addition, citing Bryan v. John Bean Division of FMC Corp., 566 F.2d 541, 545 (5th Cir.1978), they suggest that plaintiff's testimony is purely self-serving and lacks any indicia of trustworthiness.
We conclude that defendants' argument is in error. Initially, we note that under the Louisiana Code of Evidence, the facts or data on which an expert bases his opinion need not be admissible in evidence so long as they are "of a type reasonably relied upon by experts in a particular field." La.C.E. art. 703. Defendants argue that Dr. Wolfson would not rely on such speculative evidence if he were offering financial advice to a business. That may be true. However, this is not a case about financial planning. Dr. Wolfson was asked to calculate plaintiff's future lost wages based on the premise that plaintiff might have received a promotion with a commensurate increase in salary. Dr. Wolfson, through his testimony, was not attesting to the accuracy of the $107 figure. Rather, he was simply projecting the plaintiff's potential future lost wages.
In this vein, we note that plaintiff's testimony as to the $107 per day figure was uncontroverted in the record. No one from Odeco or Tidex disputed the accuracy of plaintiff's testimony. In fact, Captain Thomas Holzhauser, master of the M/V CRIMSON TIDE, testified that the wage rate increased as one progressed from able-bodied seaman to mate to captain, though he did not provide any specific figures for each position. Although it is true that plaintiff's testimony as to the wage rate for mates could be considered self-serving, it is within the province of the jury to make such a credibility determination. The jury was not required to believe plaintiff's testimony, either about the wage rate or the fact that he was actively seeking promotion to mate.
Thus, even though plaintiff's testimony may have constituted hearsay, a point on which we express no opinion, that does not taint Dr. Wolfson's testimony. Dr. Wolfson was simply performing economic calculations based on information with which he was provided by plaintiff's counsel. It remained for the jury to determine the credibility and accuracy of plaintiff's testimony about his increased wage rate and to determine his future lost wages accordingly.
Finally, we note that other courts have permitted the jury to consider possible promotions and raises in calculating awards for loss of future earning capacity. For example, in Robinson v. Graves, 343 So.2d 147 (La.1977), the plaintiff argued that had she *1256 not been injured and forced to stop working, she would have been promoted from assistant credit manager to credit manager with a corresponding increase in salary from $400 a month to $800. The trial court, in a bench trial, admitted testimony concerning the increased salary and, in awarding damages, calculated plaintiff's past and future lost wages using a figure of $700 a month. The Court of Appeal reversed, stating that the $700 figure was speculative.
The Louisiana Supreme Court granted writs, reversed the Court of Appeal, and reinstated the decision of the trial court. In its decision, the court explained:
Far from abusing its discretion, the trial judge soundly exercised his discretion and in an attempt to render a judgment fair to both litigants settled on a figure of $700.00 a month as the plaintiff's probable future salary and thus computed plaintiff's future loss of earnings, properly discounted, at $82,000.
There was no abuse of discretion by the trial judge. The award of the trial court was "reasonably supported by the evidence and justifiable inferences from the evidence before it." It was error for the Court of Appeal to substitute its judgment for that of the trial judge.
Id. at 149 (citation omitted). Thus, it was proper for the court below in this case to consider the possibility of plaintiff's promotion to mate and increased salary in computing his past and future loss of earnings. Moreover, the Louisiana Supreme Court, by writ directed to the trial court, ordered that testimony concerning plaintiff's possible promotion be admitted at trial. The figure ultimately awarded by the jury was well within the limits established by Dr. Wolfson's testimony. Calculations concerning future loss of earnings are necessarily imprecise and must be decided on a case-by-case basis. Id. We cannot say that the jury's award in this case was manifestly erroneous or an abuse of its discretion.

Future Medical Expenses
Defendants next complain that the jury erred in awarding plaintiff $32,000 for future medical expenses. The standard for reviewing an award of future medical expenses was recently summarized by this court in Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4 Cir. 5/17/94); 638 So.2d 306, as follows:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.
638 So.2d at 322 (quoting Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1262 (La. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994)). In other words, "[a]lthough the claimant is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record." Id. at 323.
The record in this case reveals that plaintiff likely will require further surgery on his knee. Dr. Kinnett testified that when he examined plaintiff on June 7, 1993, there was positive sag sign and positive posterior draw, which indicate continuing instability in plaintiff's posterior cruciate ligament that could warrant surgical intervention. In addition, both Dr. Kinnett and Dr. Manale testified that without surgery to correct this instability, plaintiff would suffer increased degenerative arthritis and would be unable to engage in activities requiring knee stability.
Defendants argue that because Dr. Kinnett did not "recommend" surgery to repair plaintiff's posterior cruciate ligament, the relevant standard of proof was not satisfied. We must reject this argument. Throughout his testimony, Dr. Kinnett indicated that he does not make recommendations to his patients. Rather, he presents them with all available options and the advantages and disadvantages of each; the ultimate decision remains the patient's alone. In these circumstances, Dr. Kinnett was not required to use the magic word "recommend" in order for plaintiff to show that further surgery will be *1257 necessary. In light of the entirety of the medical testimony, we find that there was sufficient proof that future medical expenses will be necessary and inevitable.
The more difficult problem is the quantum of this award. The only testimony adduced at trial is that arthroscopic surgery on plaintiff's knee would cost between $12,500 and $13,500 with an additional undetermined amount for anesthesiology.[5] There was no specific testimony concerning the cost for reconstructive surgery on plaintiff's posterior cruciate ligament.
In this case, we are forced to conclude that the jury's award for $32,000 for future medical expenses is in error. It is true that an award for future medical expenses can not be calculated with mathematical certainty. Burton v. Berthelot, 567 So.2d 649, 663 (La. App. 4th Cir.), writ denied, 569 So.2d 989 (1990). However, "[f]uture medical expenses must be established with some degree of certainty." Id. The evidence produced by plaintiff at trial showed only that he faced surgery with a potential maximum cost of $13,500 plus fees for anesthesiology. However, the record reveals no cost estimate for anaesthetist's fees, nor any projections about the cost of reconstructive surgery on plaintiff's posterior cruciate ligament. Absent such evidence, the jury's award for future medical expenses in excess of $13,500 is sheer conjecture and may not be sustained on appeal. Accordingly, we amend that the judgment to award plaintiff $13,500 in future medical expenses.

General Damages Award
In his response to the appeal of Odeco and Tidex, plaintiff attacks the jury's award of general damages. As noted above, the jury awarded plaintiff $48,000 for past pain and suffering and $75,000 for future pain and suffering. Plaintiff contends that the jury was prejudiced by improper closing argument of defense counsel. In response, Odeco and Tidex assert that this Court lacks jurisdiction to hear plaintiff's appeal and that even if jurisdiction exists, counsel's argument was not improper.
Initially, we find that this Court does have jurisdiction to hear plaintiff's appeal. A review of the record in this case reveals that plaintiff filed an answer to defendants' appeal on October 6, 1993, in which he specifically raised the question of the general damages award. Plaintiff's answer was timely filed as required by La.C.C.P. art. 2133. Accordingly, plaintiff has properly vested this Court with jurisdiction to hear his appeal of the general damages award.
Next, we pretermit plaintiff's argument concerning defense counsel's closing argument because we find that the jury's award of general damages was manifestly erroneous. We recognize that in considering the jury's award, we should look not to prior awards, but to the individual circumstances of this case. Talamo v. Shad, 619 So.2d 699, 705 (La.App. 4th Cir.), writ denied, 625 So.2d 175 (La.1993) (citation omitted).
As noted above, plaintiff sustained serious damage to his left knee. At trial, Dr. Kinnett testified that plaintiff had destroyed or ruptured seventy-five percent of the stabilizing ligaments in his knee and fifty percent of the meniscal component of his knee and in addition had compression-type lateral tibial plateau fractures. Following reconstructive surgery, plaintiff was required to wear a cast for eight weeks and was not allowed to place any weight on the knee for three months following his initial surgery. Dr. Kinnett stated that there would be significant pain associated with plaintiff's injuries and subsequent rehabilitation due to adhesions on the ligaments that would have to be stretched or eventually ruptured. Dr. Kinnett also indicated that there could be loss of bone material in plaintiff's lower leg due to its being in a cast for such a prolonged period. Although this material is eventually replaced through weight-bearing on the leg, Dr. Kinnett stated that it is a painful process. Additionally, Dr. Kinnett testified that one would expect there *1258 to be biochemical alterations in the knee that would produce pain and that "the patient may have lost some of the normal motor strength and tone from the environment that the extremities placed in utilizing a cast and a brace." Finally, we note that plaintiff's treating physician assigned plaintiff an impairment rating of 40% as of November 15, 1991, although he also indicated that there was room for some further improvement.
In light of this evidence, we conclude that the jury's award of $123,000 in general damages is manifestly erroneous and is less than that which a reasonable trier of fact should have assessed for the effects of these injuries to this plaintiff under the specific facts of this case. See Youn, 623 So.2d at 1261. Our review of the uncontroverted medical evidence in this case and damage awards in other cases convinces us that an award of $200,000 is the lowest possible amount that could be awarded without there being an abuse of discretion on the part of the fact finder. Cf. Morales v. Tetra Technologies, Inc., 608 So.2d 282 (La.App. 3d Cir.1992) (award of $334,000 for plaintiff who underwent two arthroscopic procedures to correct a torn meniscus and anterior cruciate ligament), writ denied, 610 So.2d 818 (La.1993); Corliss v. Elevating Boats, Inc., 599 So.2d 434 (La.App. 4th Cir.1992) (award of $75,000 for plaintiff who tore medial meniscus and underwent surgery to repair it, but who had no damage to his ligaments). Accordingly, we amend the judgment to award plaintiff $200,000 in general damages. For purposes of calculating pre-judgment interest, we apportion this award as follows: $48,000 for past pain and suffering and $152,000 for future pain and suffering. As amended, this portion of the trial court's decision is affirmed.

Award of Prejudgment Interest
Finally, plaintiff attacks the trial court's award concerning prejudgment interest. In its judgment for the plaintiff, the trial court held Odeco liable for pre-judgment interest on plaintiff's claims for past pain and suffering and past lost wages, measured from date of injury. Additionally, Odeco and Tidex were found jointly liable for judicial interest on the remainder of plaintiff's claims from the date of award. Plaintiff contends that he should have been awarded federal pre-judgment interest on all claims. Defendants contend that because pre-judgment interest is not available under the Federal Employer's Liability Act, Monessen Southwestern Railway Co. v. Morgan, 486 U.S. 330, 337-39, 108 S.Ct. 1837, 1843-44, 100 L.Ed.2d 349 (1988), which is incorporated into the Jones Act, pre-judgment interest is not available in this case.
In resolving this issue, we are guided by this Court's decision in Corliss v. Elevating Boats, Inc., 599 So.2d 434 (La.App. 4th Cir. 1992), in which plaintiff, a shipmaster, brought suit against the vessel's owner and lessee after he was injured while working aboard the vessel. The trial court found that plaintiff was injured through the unseaworthiness of the vessel and granted a verdict in favor of plaintiff against the vessel's owner and dismissing the vessel's lessee. However, the court refused to grant the plaintiff pre-judgment interest on his damages award. In reversing the trial court on this point, this Court stated:
The determination of whether the plaintiff is entitled to prejudgment interest initially depends on whether he recovers under state or federal law. "Prejudgment interest" means two different things under state and federal law. Under federal law, "prejudgment interest is awarded from date of injury, under state law, `prejudgment interest' is awarded from date of judicial demand." Federal prejudgment interest generally is awarded in unseaworthiness cases involving both property damage and personal injury. However, federal pre-judgment interest generally is not awarded in Jones Act cases. Federal prejudgment interest is limited to past damages, and is not awarded on future damages. In contrast, under state law, prejudgment interest is awarded in admiralty cases on all losses, including future losses....
The general rule under federal law is that "prejudgment interest" should be awarded in admiralty cases:
As a general rule, prejudgment interest should be awarded in admiralty cases *1259 not as a penalty, but as compensation for the use of funds to which claimant was rightfully entitled. Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 728 (5th Cir.1980).
The discretion of the trial judge to deny prejudgment interest is created only when there are "peculiar circumstances" that would make it inequitable for the losing party to be forced to pay prejudgment interest. "Peculiar circumstances" has been found to include a number of fact patterns, including a genuine dispute over a good faith claim in a mutual fault setting...; improper delaying tactics by the plaintiff ..., and traditional common law equity doctrines such as laches, election of remedies, and estoppel....
Id. at 438 (citations omitted). Thus, in order to resolve this issue, we must first determine whether the trial court awarded pre-judgment interest under state or federal law; if prejudgment interest was awarded under federal law, we must then resolve the question of whether peculiar circumstances existed.
In addressing the first issue, we note the trial court's Reasons for Judgment, which states in its entirety:
The claim against Odeco was under the general maritime law and Odeco was found negligent.
The claim against Tidex was under the Jones Act and Tidex was found negligent.
For these reasons, the court awarded prejudgment interest on the portion of damages based upon the negligence of Odeco. The court sees no reason to award prejudgment interest on moneys which did not become due prior to the Judgment. Further, it is within the court's discretion to apply federal law on a general maritime law claim.
Based upon the foregoing, we find that the trial court awarded pre-judgment interest on plaintiff's claim under federal law.
Next, we find that no "peculiar circumstances" existed in this case so as to deny plaintiff an award of pre-judgment interest. Accordingly, the trial court did not err in awarding pre-judgment interest to plaintiff on that portion of the judgment attributable to Odeco. To the extent that no pre-judgment interest was awarded against Tidex, the trial court was correct. Corliss explicitly notes that pre-judgment interest is not permitted under Jones Act cases.
Finally, we find that the trial court was correct in denying pre-judgment interest on plaintiff's claims for future losses. As noted in Corliss, pre-judgment interest is not intended to punish the defendant. Because plaintiff was not entitled to monies for his future losses until they were quantified by the jury, awarding pre-judgment interest on those amounts would do nothing more than punish the defendant. Thus, contrary to plaintiff's suggestion, Corliss does not mandate that pre-judgment interest be applied to future losses. Accordingly, the trial court was correct in not awarding pre-judgment interest on plaintiff's award for future losses. Such a ruling is amply supported by the jurisprudence. See, e.g., Martin v. Walk, Haydel & Assocs., 794 F.2d 209, 212 (5th Cir.1986); see also Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-21, at 234 n. 2 (2d ed. practitioner treatise series 1994) ("Prejudgment interest is also denied as to future damages because the plaintiff has suffered no delay in payment."). Accordingly, that portion of the judgment concerning pre-judgment interest is affirmed in its entirety.

CONCLUSION
For the forgoing reasons, we affirm the trial court's granting of defendant's exception of no cause of action on plaintiff's claim for punitive damages. We amend the judgment for future medical expenses by reducing it to $13,500 and increase the award for general damages to $200,000. In all other respects, the judgment is affirmed. Each party shall bear their own costs in this appeal.
NOTES
[1] Defendants filed a Motion in Limine to prevent the issue of punitive damages from arising at the trial.
[2] Non-pecuniary damages include "loss of society, loss of consortium, loss of companionship, loss of love and affection, loss of comfort, grief and mental anguish and punitive damages." In re Waterman S.S. Corp., 780 F.Supp. 1093, 1094 (E.D.La.1992).
[3] We do not mean to suggest that this was true in the instant case. In fact, there were no jurisdictional disputes raised at all. Nevertheless, the specter of encouraging such litigation compels us to reach the conclusion we do.
[4] In accordance with the internal rules of this court, this proposal to overrule a prior decision of this court was submitted to each member of the court. A majority of the en banc approved and thus we are empowered to render this decision overruling Mistich.
[5] In actuality, Dr. Manale had already performed this surgery on plaintiff by the time of trial. However, because plaintiff had not complied with a court order concerning an independent medical examination prior to undergoing this surgery, Dr. Manale was not permitted to testify about any treatment he rendered to plaintiff after November 15, 1991. Thus, the possibility of arthroscopic surgery was treated prospectively only.